## M'Cahan *against* Hirst.

A justice of the peace has jurisdiction of a cause of action arising out of a contract of bailment.

A count, in a declaration in trover and conversion, may be joined with other counts in case, for negligence in not taking care of goods delivered for safe keeping.

ERROR to the common pleas of *Huntingdon* county.

Andrew H. Hirst against John M'Cahan. This cause originated before a justice of the peace, and was brought into the common pleas by appeal. The plaintiff filed the following declaration : to which the defendant pleaded not guilty.

John M'Cahan of said county, yeoman, was attached to answer Andrew H. Hirst of a plea of trespass on the case, &c. And whereupon the said Andrew H. Hirst by George Taylor his attorney, complains, for that whereas heretofore, to wit, on the 25th day of March, A. D. 1835, at the borough of Huntingdon, in the said county of Huntingdon, the said Andrew H. Hirst, at the special instance and request of the said John M'Cahan, caused to be delivered to him the said John M'Cahan certain goods and chattels of him the said Andrew H. Hirst, to wit, thirteen bushels of clover seed of great value, to wit, of the value of 65 dollars lawful money of the United States, to be by him the said John M'Cahan safely and securely kept at the said borough of Huntingdon, in the county aforesaid, for the said Andrew H. Hirst, for reasonable reward to the said John M'Cahan, in that behalf ; and the said John M'Cahan then and there had and received the said goods and chattels for the purpose aforesaid ; yet the said John M'Cahan, not regarding his duty in that behalf, conducted himself so carelessly, negligently and improperly in and about the keeping, retaining and custody of the said goods and chattels, to wit, the said thirteen bushels of clover seed, that, by and through the negligence and improper conduct of the said John M'Cahan and his servants in that behalf, the said goods and chattels, to wit, the said thirteen bushels of clover seed, of the value aforesaid, became and were wholly lost to the said Andrew H. Hirst, to wit, at the county aforesaid, to the damage of the said Andrew H. Hirst 100 dollars.

And the said Andrew H. Hirst, by his said attorney further complaining, for that whereas, heretofore, to wit, on the 25th day of March, A. D. 1835, at the borough of Huntingdon, in the county of Huntingdon aforesaid, in consideration that the said Andrew H. Hurst, at the special instance and request of the said John M'Cahan,

[M'Cahan v. Hirst.]

had caused to be delivered to him, the said John M'Cahan, certain other goods and chattels, to wit, five barrels filled with clover seed, containing thirteen bushels of clover seed of great value, to wit, of the value of 65 dollars, like lawful money as aforesaid, to be taken care of, and safely and securely kept by the said John M'Cahan, for the said Andrew H. Hirst, he the said John M'Cahan undertook, and then and there agreed with the said Andrew H. Hirst to take due and proper care of the said barrels and clover seed for the said Andrew H. Hirst, and to redeliver the same to the said Andrew H. Hirst when he the said John M'Cahan should be thereunto afterwards requested; and although the said John M'Cahan was afterwards, to wit, on the 30th day of March, A. D. 1835, at the said county of Huntingdon, requested by him, the said Andrew H. Hirst, to redeliver the said clover seed to him, the said Andrew H. Hirst, to wit, at the borough of Huntingdon aforesaid, in the county of Huntingdon aforesaid, yet the said John M'Cahan not regarding his duty in that behalf, but contriving and fraudulently intending craftily and subtly to deceive the said Andrew H. Hirst in this behalf, did not, nor would, take due and proper care of the clover seed aforesaid for the said Andrew H. Hirst, nor did nor would, when he was so requested as aforesaid, or at any time before or afterwards, redeliver the same or any part thereof, to the said Andrew H. Hirst, but on the contrary thereof, he the said John M'Cahan so carelessly behaved and conducted himself with respect to the said clover seed, and took so little and such bad care thereof, that by and through the carelessness, negligence and improper conduct of the said John M'Cahan, the said clover seed became and was wholly lost to the said Andrew H. Hirst, to wit, at the county aforesaid, to the damage of the said Andrew H. Hirst one hundred dollars.

And whereas, also heretofore, to wit, on the 25th day of March, A. D. 1835, at the county of Huntingdon aforesaid, the said John M'Cahan, at his special instance and request, had the care of certain other goods and chattels, to wit, of thirteen bushels of clover seed of the said Andrew H. Hirst, of great value, to wit, of the value of 65 dollars, like lawful money as aforesaid, yet the said John M'Cahan not regarding his duty in that behalf, did not nor would take due and proper care of the said last mentioned clover seed, but wholly neglected so to do, and took such bad care thereof, that afterwards, to wit, on the 30th day of March, A. D. 1835, the said last mentioned clover seed became and was wholly lost to the said Andrew H. Hirst, to wit, at Huntingdon county aforesaid, to the damage of the said Andrew H. Hirst 100 dollars.

And the said Andrew H. Hirst, by his said attorney, further complains, for that the said Andrew H. Hirst heretofore, to wit, on the 25th day of March, A. D. 1835, at the county aforesaid, was lawfully possessed, as of his own property, of certain goods and property, to wit, five barrels of clover seed, containing in all thirteen bushels of clover seed; and being so thereof possessed, he the said

[M'Cahan v. Hirst.]

Andrew H. Hirst afterwards, to wit, on the 25th day of March, A. D. 1835, last before mentioned, at the said county of Huntingdon, casually lost the said goods and chattels out of his possession; and the same afterwards, to wit, on the 25th day of March, A. D. 1835, last aforesaid, at the county aforesaid, came to the possession of the said John M'Cahan by finding. Yet the said John M'Cahan, well knowing the said goods and chattels or clover seed to be the property of the said Andrew H. Hurst and of right to belong and appertain to him, but contriving and fraudulently intending craftily and subtly to deceive and defraud the said Andrew H. Hirst in this behalf, hath not as yet delivered the said goods and chattels, to wit, the said clover seed, or any part thereof to the said Andrew H. Hirst, although often requested so to do, and hath hitherto refused so to do, and afterwards, to wit, on the 30th day of March, A. D. 1835 aforesaid, at the county aforesaid, converted and disposed of the said thirteen bushels of clover seed to his own use. To the damage of the said Andrew H. Hirst 100 dollars, and thereof he brings suit, &c.

The jury under the direction of the court (Burnside, President) gave a verdict for the plaintiff.

*Miles,* for plaintiff in error, contended that a justice of the peace had no jurisdiction of the cause of action, and cited, 2 *Penns. Rep.* 292 ; *Story on Bailments* 320 ; and that there was a misjoinder of counts in the declaration, 1 *Chit. Pl.* 148, 197; 5 *Burrows* 2825.

*Blanchard,* for defendant in error, upon the first point, relied upon 6 *Watts* 47 ; and as to the joinder of the counts, upon 2 *Serg. & Rawle* 358.

The opinion of the Court was delivered by

KENNEDY, J.—Although several matters have been assigned for error, we think there is not the least colour of ground for supporting any of them, except that which alleges a want of jurisdiction in the justice of the peace before whom the action was originally instituted.

But in the first place I would observe, in respect to the exception taken to the judgment, founded upon the allegation, that the evidence was not sufficient to support the count in the declaration for trover ; and that, therefore, the verdict and judgment being given generally on all the counts, the judgment is erroneous, that we cannot notice it even if it were so in fact : because the record does not show the fact to be so ; the evidence given on the trial is not set out on the record, so as to form a part of it and bring it before us, so that we may know what it was. But it would rather seem from the charge of the court below, that some evidence, from which the jury might have found a conversion, was given to them ; because the court, as it appears from their charge, told the jury that if they should find that M'Cahan received the clover seed, and that he refused to deliver it to the plaintiff below, they might thence infer a conversion. Now

VII.—Q

in the absence of evidence to the contrary, it would be a great want of respect for the court below, as well as a violation of every rule on the subject, to presume that they submitted it to the jury to find whether M'Cahan refused to deliver the clover seed to Hirst or not, without some evidence being given, tending to prove a demand and refusal.

Then as the charge of the court in regard to all the other questions raised by the errors assigned, is perfectly correct, and without the least shadow of difficulty, excepting that of the want of jurisdiction in the justice, they are pretermitted with entire approbation of the law as laid down in relation thereto by the court. But the error alleging a want of jurisdiction, though deemed untenable, as well as all the rest, requires to be considered, in order that the rule, which it is conceived ought to govern in this respect, may not only be firmly settled but fully understood.

By the first section of the act of the 20th of March 1810, *Stroud's Purd. Dig.* 578, justices of the peace have jurisdiction given to them " of all causes of action arising from contract, either express or implied, in all cases where the sum demanded is not above 100 dollars ; except in cases of real contract, where the title to lands or tenements may come in question, or action upon promise of marriage." Then, by the fourth section of the act, the right of appeal after a trial before the justice of the peace is given to either party; and when the cause is brought into court by appeal, it is provided that " the suit shall from thence take grade with and *be subject to the same rules as other actions where the parties are considered to be in court.*" And further again, " that upon *any such appeal* from the decision, determination or order of two justices of the peace, to the *court of common pleas*, or court of quarter sessions in any county, the same shall be decided in such court, on *its facts* and the *merits only* ; and *no deficiency* of *form* or *substance* in the record or proceedings returned, nor any *mistake* in the *form* or *name* of the action, shall prejudice either party in the court to which the appeal shall be made." Now does the case before us, as presented by the record, come within the provision giving justices of the peace jurisdiction ? The complaint of the plaintiff below substantially was, that the defendant, having become by contract the bailee of clover seed belonging to the plaintiff, did not take care of and account for it to the latter as he ought to have done. Contract then being the foundation of the duty imposed upon the defendant, by his having become bailee, it is clear that a breach of the duty thereby imposed, which is the real cause of action here, must be regarded as *arising out of contract*, and therefore within the jurisdiction of the justice according to the express terms of the act ; which embrace " *all causes of action arising from contract*, either *express* or *implied ;*" with the exception as recited above, which has nothing to do with this case. But it is objected that the plaintiff below has charged in his declaration, and particularly in the first count thereof, that the clover seed was lost through negligence and want of care on

[M'Cahan v. Hirst.]

the part of the defendant below, which is, as it is alleged, a cause of action that does not fall within the terms giving justices of the peace jurisdiction ; and Zell *v.* Arnold, 2 *Penns. Rep.* 292, has been cited in support of this proposition.   That case, however, was unlike the present ; for the cause of action there was considered substantially a *misfeasance;* but here it cannot, at most, be made to amount to more than a *nonfeasance ;* which latter, properly speaking, is the non performance of a duty ; and whenever such duty arises, as it does here, out of a contract, the non performance of it becomes, and in reality is, nothing more nor less than a non performance or breach of the contract imposing the duty.   Hence the contract is the real foundation of the cause of action, which must be considered as arising immediately from the breach of it.   But a *misfeasance* is a *trespass* or *wrong* committed, which in contemplation of law has no relation to a contract in any case.   And upon this ground, the decision of the court seems to have been made in Zell *v.* Arnold.   It may also be remarked, that the reasoning of the chief justice, as well as the authorities referred to by him in that case, show that there is no misjoinder of counts in this case, which is also one of the matters assigned for error.   But in Hunt *v.* Wynn, 6 *Watts* 47, the same question precisely of jurisdiction that is raised here, was made there, and directly decided by this court.   There the action was originally instituted before a justice of the peace, and after trial there, brought into the common pleas by appeal, against the defendants as common carriers, for the loss of the plaintiff's goods, through negligence and want of due care : the first count in the declaration, charged the defendants with having received the goods as common carriers, and that they carried them so negligently and carelessly, that the goods were lost.  By the second count, they were charged with having undertaken to carry the goods from Philadelphia to Harrisburg, where they promised to deliver them safely to the plaintiff, but had failed to carry and deliver them *according to their engagement* ; and held that the justice of the peace had jurisdiction of the cause of action.   We think this decision not only well sustained by the reasoning and authorities contained and cited in the opinion of the court, but completely warranted by the provisions, recited above, of the act of assembly.   We do not think, as was contended on the argument of the case, that the plaintiff below, after the cause was brought into court by the appeal, was bound, in drawing and filing his declaration, to confine himself to such counts as might be considered purely *ex contractu,* but that he was at liberty to declare in the same manner as if the suit had been commenced originally for the same cause of action in court : because, when the action is brought by appeal into court, the words of the act are, that "the suit shall from thence take grade with, and *be subject to the same rules,* as *other actions, where the parties are considered to be in court."*   And the subsequent provision in the act, which declares that " the cause shall be decided in such court on its *facts* and *merits only* ; and that no *deficiency* of *form* or *substance* in the

record or proceedings returned, nor any *mistake* in the *name* or *form* of the action, shall prejudice either party in the court to which the appeal shall be made," goes still farther, as I apprehend, to show that all mistakes, either in regard to form or substance, committed before the justice, may be corrected, or shall not be taken advantage of afterwards in court, but that every thing of the kind shall be rectified, and the cause be proceeded in according to the same rules, that is, in *the same manner*, as if it had been brought originally in court. It may possibly, however, be said that this last recited provision of the act extends only to cases of appeal from decisions when given by *two* justices of the peace acting in conjunction with each other. Although such would seem to be its literal import, yet we feel satisfied that there must be some mistake as to this; because all the appeals previously provided for and mentioned in the act, are appeals from the decision of a single justice of the peace; and to hold that they were not intended to be embraced, would seem to render the provision, partly at least, unmeaning and inoperative as to the word " such," which is used in connection with the word " appeal," seemingly as it were, for the purpose of referring to the appeals before spoken of.   It may however be, that the legislature intended to include cases of appeals provided for in some other acts of assembly, giving to justices of the peace jurisdiction in other cases, wherein two are required to act jointly, in addition to the cases mentioned in the act recited; but then the words " any *such* appeal," which are the terms of the clause, are very inappropriate to convey such an idea, and would scarcely have been used if the cases of appeals previously provided for in the act had been intended to be excluded.   And certainly the propriety, as well as necessity *of such provision is not* less in cases of appeal from the decision of a single justice of the peace, than in that from those of two justices, where, seeing the number is increased, more wisdom might reasonably be expected to be exercised, and consequently less occasion *to provide for* the correction of errors or mistakes.

Judgment affirmed.