## Abbott's Executor *versus* Reeves *et al.*

*Rights and duties of borrower of trust property.—Executor a trustee in Pennsylvania.—Borrower of trust funds, when amenable to court of equity, and compelled to restore property borrowed.*

1. If a trustee commit a breach of trust by loaning the assets to another, the borrower is bound to indemnify the trustee: and if he has the trust property *in specie* will be obliged by a court of equity to restore it to the trustee from whom it was loaned.

2. An executor in Pennsylvania is emphatically a trustee; all funds of the estate in his hands, are trust funds, and if loaned by him to others with knowledge of the facts, are trust property in the hands of the borrowers, and must be repaid whether properly loaned or not.

3. Thus where a firm borrowed of an executor as part of the estate of his testator, shares of the stock and evidences of the loan of a public corporation, under an express agreement to restore to the executor, or his successor in the trust of executing the will, the assets and securities borrowed, the borrowers are compellable in equity to restore to the executor the loan and stock with the interest and dividends thereon not already received by the executor.

CERTIFIED from the Supreme Court at *Nisi Prius*

This was a bill in equity by Charles H. Abbott, surviving executor of the will of the late Timothy Abbott, deceased, against David Reeves, Samuel J. Reeves, Robert S. Buck, and Samuel Whittaker, late trading as Reeves, Buck & Co., The Girard Bank, The American Fire Insurance Company, and The Pennsylvania Company for Insurance on Lives and Granting Annuities, to compel

the restoration and return to the complainant (as the lawful representative of the estate of the decedent, and as trustee for the legatees interested under the will of the decedent), of securities belonging to the estate of such decedent, which were loaned by the complainant to Reeves, Buck & Co., for a specific purpose which has been fulfilled, and which were contracted to be returned by said Reeves, Buck & Co., in instalments at a specific time, all of which had elapsed before the filing of the bill. Reeves, Buck & Co. at first filed an answer to the bill, and all the other defendants filed separate answers thereto. Afterwards Reeves, Buck & Co. obtained the leave of court to withdraw their answer and to file a general demurrer to the complainant's bill, which was done.

The bill averred that "on the 28th day of February 1862, the complainant loaned without compensation or charge therefor unto the said first-named defendant, then doing business under the firm-name of Reeves, Buck & Co., five thousand dollars of the loan of the Lehigh Coal and Navigation Company, and five hundred shares of the capital stock of said company belonging to the estate of said Timothy Abbott, with liberty to pledge the same to raise money thereon, but under the conditions to return and restore two thousand dollars of said loan to the complainant on the 1st of September 1862, and on the 19th day of October 1862, two hundred shares of said stock, and on the 1st day of March 1863, the remainder of said loan, and on the 19th day of April 1863 the remainder of said stock, and stipulated that the interest and dividends should be paid to said executor by said company, by the written agreement of said Reeves, Buck & Co., a copy of which was annexed as part of the bill.

"That but two thousand dollars of said loan, and two hundred shares of said stock in the Lehigh Coal and Navigation Company, have been returned according to said contract, and that three thousand dollars, the residue of said loan, now stands on the books of said company in the name of the Girard Bank; ninety-six shares of said stock in the name of the said American Fire Insurance Company; one hundred of such shares of stock in the name of the Pennsylvania Company for Insurance on Lives and Granting Annuities; and one hundred and four of said shares in the name of said Reeves, Buck & Co.

"That all moneys borrowed by said Reeves, Buck & Co. on said loan and stock have been fully paid off, and that they have been relieved from the pledge which was the object of the loan thereof to the said Reeves, Buck & Co. Yet the said Reeves, Buck & Co. have refused to return said loans and stock to the complainant, and refuse to permit him to receive the interest on the loan and the dividends on said stocks, contrary to their said agree-

[Abbott *v.* Reeves, Buck & Co.]

ment, by a notice to Lehigh Coal and Navigation Company forbidding it."

The complainant prayed:—

1. That if the loans or any of them made on said loans or stock have been paid off, that the said several corporate defendants who made such loans, shall be decreed to assign the said loan or stock on the books of the Lehigh Coal and Navigation Company unto the complainant.

2. That if said loans be not fully paid off, then that said first-named defendants be decreed to pay off and forthwith discharge the same from pledge, and that thereupon the said other the corporation defendants be decreed to assign the same to the complainant.

3. That said Reeves, Buck & Co. be decreed to assign said one hundred and four shares of stock unto the complainant, and be restrained from continuing their notice to the Lehigh Coal and Navigation Company not to pay the interest and dividends on said loan and stock to the complainant, and be decreed to withdraw any notice to that effect from said company.

4. That all said defendants be restrained from assigning said loan and stock, as respectively stands in their names, to any person or persons other than the complainant.

5. And such other and further relief as equity may require, with the usual prayer for process.

The answer of Girard Bank set forth that the bank loaned, on the 6th December 1862, $2500 on the note of Reeves, Buck & Co., through D. W. C. Smith, a broker, with $5000 of the loan of the Lehigh Coal and Navigation Company as collateral. That said note was paid 9th April 1863, and said certificate of loan was returned to said Smith, with a power of attorney to have the same re-transferred from these defendants, it having before been transferred to them, and as they believe remains in their power in consequence of a notice from complainant.

The answer of American Fire Insurance Company stated that for a long time they held $5000 of the Lehigh loan as collateral for the note of Reeves, Buck & Co., which note was renewed from time to time; and the last renewed note was, about the 28th February 1862, paid off, when the said loan was assigned to Reeves, Buck & Co., from whom it had been received. That on the 20th December 1862, the said defendants purchased, through a broker, a note of Reeves, Buck & Co. for $4320, secured by ninety-six shares of the Lehigh stock as collateral. That said note, after being twice renewed, was paid, and the said ninety-six shares were assigned to Reeves, Buck & Co., from whom they were received.

The answer of Pennsylvania Company for Insurance of Lives, &c., stated that on the 13th March 1862 they discounted a note

[Abbott *v.* Reeves, Buck & Co.]

of Reeves, Buck & Co. for $4000, payable on 14th June 1862, and took as collateral security one hundred shares of the Lehigh Navigation loan, transferred into their name. That said note was once renewed, and paid off on 17th September 1862, and the said certificate of loan was returned through the broker who negotiated the loan, with a power of attorney to transfer the stock.

The answer of Reeves, Buck & Co., as originally filed, having been withdrawn by them by permission of the court, they filed a general demurrer, averring that complainant had not by his said bill made such a case as entitled him in a court of equity to any discovery or relief from or against the said defendants touching the matter contained in said bill or any of them.

This demurrer was argued at Nisi Prius, when the following opinion was delivered by the learned judge then presiding:—

" A trust is not alleged in the defendants, and if it had been, the Exhibit A., which is a contract between Reeves, Buck & Co., would have disposed of the allegation. It is therein distinctly stated that the securities mentioned, consisting of certificates of loan and stock of the Lehigh Coal and Navigation Company, were loaned by the plaintiffs and borrowed by the above-named defendants on terms to be repaid in kind at certain times. This was clearly a contract of borrowing, enforceable at law, and not cognisable in equity, for there is an adequate remedy on the contract at law. The bill does not allege that the identical stock lent was in specie to be returned, nor that the stock and loan alleged as standing in the names of the several defendants is the identical stock loaned to Reeves, Buck & Co. Such a thing could not well have been pretended to be the meaning of the contract, for the very purpose of loaning it was to place it in a situation that it might pass to other parties. It would have been no collateral security otherwise. The plaintiffs parted with their title and possession in it, and took as their security for a return of the same amount in the loan of the company and stock, the written promise and contract of the borrower. To this they must look in an action to recover the value of it.

" The case is unlike a bailment or trust for a specific purpose, which supposes a constant retention for the bailors of the thing bailed or trusted. Nor is it at all like a case of refusal to deliver a peculiar article or transfer stock of a private corporation with no known value or never in market. There have been cases in which the duty and obligation to deliver such things has been enforced in equity. But here there is no obligation to return the identical stock, and no trust of it any more than there would have been on a borrowing of a certain number of bushels of wheat, to be returned in kind. It is not a case for equity, and I feel constrained to give judgment for the defendants on the

13 Wr.—32

demurrer. As the relief is thus denied, the discovery prayed, being only in aid of the relief prayed, fails also.

"Now, to wit, November 26th 1864, let judgment be entered for the defendants on the demurrer, and the bill is dismissed at the costs of the plaintiffs."

The complainant, upon the appeal taken by him to the court in banc, assigned the following errors:—

1. The court erred in entering judgment for the defendants on the demurrer filed by them.

2. The court erred in making the decree of November 26th 1864, by refusing to entertain the complainant's bill, and to require the demurrants to answer over.

3. The court erred in dismissing complainant's bill.

*Eli K. Price* and *J. B. Townsend*, for appellant.—I. The learned judge who sustained the demurrer and dismissed the plaintiff's bill, overlooked a fact which is thoroughly disclosed in the bill, and which gives, as it is submitted, full jurisdiction to a court of equity in the matter presented.

That fact is, that the property borrowed was all of it trust property. It was trust property which the plaintiff may have had dominion over so far as to vest him with the legal title and power of disposition; but he made a partial or qualified disposition of the securities to a party who knew they were trust assets, and borrowed them as such: and agreed to replace them for the use of the *cestui que trust*, in kind.

The receipt given at the time of the borrowing is to the plaintiff, "as surviving executor of Timothy Abbott, deceased;" the receipt is for the following assets and securities "of the estate of said decedent." Then the promise is: "We do promise and agree to and with the said Charles H. Abbott, surviving executor as aforesaid, that we will restore and return to him, or his successor in the trust of executing the said will, the assets and securities so borrowed, at the time and in the way and manner above stated," &c.

Here, then, is the case of a party borrowing securities, which he takes from the trustee with the fullest recognition that they are trust property, and are to be used for a special purpose, not necessarily involving sale, and are to be restored in kind to the trustee, for the uses and trusts upon which they were held when loaned.

The case is one of the pursuit of trust property which is in danger of diversion and misuse. The answers of the answering defendants and the averments of the bill prove the existence of the stocks and loan borrowed in the possession and control of the defendants. It has not been disposed of, but exists still, impressed with the trust, subject to which it was taken.

[Abbott v. Reeves, Buck & Co.]

Hill on Trustees, p. 164, 3d Am. ed., 246, says: "It may be laid down as a general rule that a purchaser from a trustee, with notice, though for a valuable consideration, *a fortiori* a volunteer taking with notice is in equity bound by the trust to the same extent as the person from whom he purchased, and this whether the trust be express or constructive." Citing 3 Atk. 238; 1 Eq. Cas. Abr. 32, pl. 43; 2 Ves. 498; 2 Ves., Jr. 437; 2 Sch. & Lef. 583; 2 Sugd. V. & P. 269; 14 Beav. 34.

The identity of a sum of money or debt affected by a trust, does not consist in the pieces of coin, but in the fund, which may be followed so long as it can be traced: U. S. v. Inhabitants of Waterborough, Davies 154; Gœpp's Appeal, 15 Penna. St. Rep. 428; Pierce v. McKeehan, 3 W. & S. 280.

A purchase from an executor or administrator of the testator's estate will not be suffered to prevail against the beneficial title of creditors or legatees, or next of kin. So, also, where the purchaser bought with knowledge that the transaction amounted to a devastavit or misapplication of the assets: Hill on Trustees, p. 165, 166. See also to same point 1 Mad. Ch. Pr. 379; Story's Eq. Jur., § 422. This case is that of a borrower with a written recognition of the trust.

The power of a court of equity in this state to follow trust assets, whenever they can be traced into the hands of other parties taken with notice of the trust, and to compel their application or restoration, is clear: Brightly's Eq., p. 273, § 322; Harrisburg Bank v. Tyler, 3 W. & S. 387.

Conversion into land will not prevent the court following it: Kirkpatrick v. McDowell, 1 Jones 393; Phillips v. Cramond, 2 Wash. C. C. 441; Pierce v. McKeehan, 3 W. & S. 280.

It is not necessary that the purchaser should have notice of the particular *cestui que trust* interested; it is enough if he has notice that the party from whom he takes is a trustee: Walsh v. Stille, 2 Parsons 21, 23; Scott v. Gallagher, 14 S. & R. 333; Stewart v. Freeman, 10 Harris 123.

II. As to jurisdiction, the rule is not if there be a remedy at law there is none in equity: but if the remedy be less complete at law than in equity (Harrison v. Rowan, 4 Wall C. C. R. 205) and the case be under any branch of equity jurisdiction? p. 206. See also Franco v. Franco, 3 Ves. 75; Fells v. Read, Id. 70; McGowin v. Remington, 2 Jones 56, 63; Nutbrown v. Thornton, 10 Ves. 159.

This is a case of a direct and most express confidence violated; and such a case as to call into vigorous activity the conscience of a court of equity, not only to restore trust property diverted into its proper trust custody, but to prevent a fraud being committed by defendants upon their express agreement and against the said trust. It is a case not only where the

[Abbott *v.* Reeves, Buck & Co.]

chancellor acts with a will, under the established heads of trust or fraud, but might well speak, as in the cited cases, with sharp reproof.

There are several heads under which equity has jurisdiction over this stock. This is not a contract of a sale of stock. The stocks are assets of the estate of Timothy Abbott, deceased. They are, as such, trust property; of which trust Reeves, Buck & Co. took with notice, and are bound in equity to restore it, as well as by contract; and may be compelled in equity to do it; 1 Story's Eq. §§ 532, 533, 534.

Discovery was necessarily sought to know whether the stock had been redeemed and who held it: the right of relief as prayed followed: 1 Story's Eq. §§ 64, 65, 71. And in case of trust or fraud, and accounts, without doubt: Id. § 455, &c.

To claim to hold trust property taken with notice of the trust, is a constructive fraud: 1 Story's Eq., § 395. See also Petrie *v.* Clarke, 11 S. & R. 377.

III. The borrower's duty is to return the thing loaned at the time agreed upon: Story's Bailment, § 257.

Also when the purpose of the loan has been answered: Id.

He cannot detain the thing borrowed for any antecedent debt due him: Id., § 264; Vin. Abr. *Bailment* B, 6; Story, § 304; Jarvis *v.* Rogers, 15 Mass. Rep. 389, 397, 414, 490; Green *v.* Farmer, 4 Burr. 2214; 7 East 224; 2 Vern. 691; 2 Kent's Com. 575, 750, ed. 8th; Walker *v.* Birch, 6 T. R. 258; Davis *v.* Bowsler, 5 Id. 492. Nor apply the thing borrowed to any other than the very purpose for which it was borrowed; nor permit any other person to use the thing loaned; nor keep it beyond the time limited; nor detain it as a pledge for any demand he may otherwise have against the bailor: 2 Kent, 8th ed., 750; (*574); Gilleat *v.* Lynch, 3 Leigh 493.

1. This is not a money claim, and can have no money offset.

2. If there could be set-off, it is waived by the agreement: Henniss *v.* Page, 3 Wh. 275.

3. There can be no lien, for that would be against the terms of the pledge.

4. It would be wholly inadmissible to settle in this suit. (1.) The voluminous accounts between Reeves, Buck & Co., and Reeves, Abbott & Co. (2.) The accounts of the Abbotts with Reeves, Abbott & Co. (3.) The settlement of the estate of Timothy Abbott. (4.) The right of the Abbotts in that estate and these stocks.

Having thus established by the foregoing authorities that the defendants Reeves, Buck & Co., took these securities impressed with a trust, and are bound to restore them to the source from which they came, we submit that this court has jurisdiction in

[Abbott *v.* Reeves, Buck & Co.]

equity of the case presented, and that the decree appealed from ought to be reversed.

*E. Spencer Miller*, for appellee, contended that, I. If a creditor or legatee had filed a bill against an executor who had fraudulently transferred or pledged assets of an estate, and the person who had received them with notice, the argument of the appellant might apply. But it cannot avail for the executor himself, who, after treating the assets as his own, and as between himself and his pledgee, disposing of them as if unaffected by any trust, takes advantage of his own breach of trust to secure a tribunal that he prefers.

The relief which equity would give in the case of the creditor or legatee is on the ground of fraud; but no case can be found in which the party guilty of the fraud can go into chancery to be relieved against the effect of it.

The executor, as between himself and his bailee, has so dealt with them that it does not lie in his mouth now to say that it is trust property. If it were, he had no right to lend it, and the fact of his doing so concludes him from alleging that he had no such right, because it was special trust property.

There is no trust except as between a trustee and his *cestui que trust*. When a trustee is proceeding to recover trust property against a stranger, the legal title being in dispute, he must go into the same forum with any other person.

II. Stripping the case of this allegation, that the subject of dispute is assets of an estate, which the appellant is not in a position to make, what is there of trust about it further than there is in every case of borrowing and lending?

As between the appellant and the appellee this is an ordinary case of a pledge of stock, which can be bought at any moment at the stock board. Will a bill lie for specific restitution?

After the very direct and clear view of his honour the judge, who heard the cause at Nisi Prius, it is hardly necessary to argue this question, but the following cases are in point :—

In Harnett *v.* Yulding, 2 Sch. & Lef. 552, Lord Redesdale says, "Unquestionably the original foundation of these decrees was simply this, that damages at law would not give the party the compensation to which he was entitled," &c. "On this ground the court, in a variety of cases, has refused to interfere, where, from the nature of the case, the damages must necessarily be commensurate to the injury sustained, as, for instance, in agreements for the purchase of stock, it being the same thing to the party where or from whom the stock is purchased, provided he receives the money that will purchase it."

Story, J., says: "And the true reason why a contract for stock is not now specifically decreed is, that it is ordinarily capa-

ble of such an exact compensation:" § 717 a. These extracts show that the law is well settled against the plaintiff in error.

III. The appellant alleges that he has a right to relief in this case, because he has a right to discovery, and that carries with it the right to relief.

The rule, as laid down by Judge Story, is, that "when the court has *legitimately* acquired jurisdiction over the cause for the purpose of discovery, it will, to prevent multiplicity of suits, entertain the suit also for relief;" but even this rule is doubted. See McKenzie *v.* Johnson, 4 Madd. 373. Admitting it to be correctly stated, when has the court "legitimately" acquired jurisdiction for discovery?

If the chapter of the same eminent jurist on the subject of "Bills of Discovery" be read, it will be found that such a bill must ask no relief; that when the discovery is attained the case closes; that in general an action should be already commenced in another court, to which the discovery is auxiliary; that the discovery must be of evidence not otherwise attainable, owing to its being in the breast of a party who cannot be examined, or not accessible, because the machinery of the court in which the suit for relief is brought is not adequate to compel its production or disclosure. But it is unnecessary to pursue this subject further. This bill is in no sense a bill for discovery. The rules of court, Nos. 40 and 41, only require a defendant to answer such of the numbered interrogatories as he is by a note at the foot of the bill particularly called on to answer. There are not only no numbered interrogatories, and no such note is to be found, but the defendants are not asked to answer at all.

The bill is filed for relief, and the rule is well established, "that to support a general demurrer to a bill seeking both discovery and relief, it is sufficient to show that the plaintiff is not entitled to the relief for which he prays." See Hare on Discovery, p. 7, and cases there cited.

The opinion of the court was delivered, May 23d 1865, by

READ, J.—The rule in equity is well settled that if a trustee commits a breach of trust by loaning the assets of the trust to a third person, that individual is bound to indemnify the trustee, and if he has the trust property in specie he will be obliged by a court of equity to restore it to the trustee from whom he borrowed it. It is the interest of the *cestui que trust* that this should be the law, for he then has two securities—the liability of the defaulting trustee, and the trust property itself restored to the person in whose custody the law places it. Lord Langdale, in answer to an argument that a testator, having concurred in the breach of trust, was equally liable with the defendant, and therefore it was not competent for him in his lifetime, and it was

[Abbott *v.* Reeves, Buck & Co.]

not competent for his representatives now, to apply to the court to be relieved from the consequence of his breach of trust, asked this question: "Can there be any doubt that if two persons concur in a breach of trust, and one alone derive the profits, the other has a right to relief against him?" In Greenwood *v.* Wakeford, 1 Beavan 576, where the trustee of a marriage settlement concurred in a breach of trust by lending the fund to the husband on a security not warranted by the settlement, it was held that the representatives of such trustee could maintain a bill against the husband, and the other *cestui que trust* for the restitution of the fund. "There was," said the Master of the Rolls, "a clear demand arising from a breach of trust, in which their testator, it is true, had concurred, but in which he had concurred, for the use and convenience of Mr. Wakeford, the husband. I own I am rather surprised to find it alleged, even in argument, that persons placed in the situation of these plaintiffs are not entitled to apply to this court for relief, for at any moment a bill might have been filed against them by the wife or daughter, by their next friends, calling on them as representing the estate of the testator, to replace that which had been lent to Mr. Wakeford, the husband; and I conceive it to be clear that they had a right to proceed against the husband for the purpose of having the matter set right." In Booth *v.* Booth, 1 Beavan 125, the same doctrine was enunciated, and the interest of a *cestui que trust*, who concurred with a trustee in a breach of trust, was held liable to indemnify the trustee. The Master of the Rolls said: "That the widow concurred, seems to be quite clear, and any interest to which she may be entitled is the proper fund to resort to *in the first instance*. If she has obtained any benefit from the breach of trust, the trustee ought to be compensated in respect of it."

In Fuller *v.* Knight, 6 Beav. 205, this doctrine is carried still further, for there it was decided that a trustee cannot by contract waive his right to resort to the life interest of a tenant for life for the purpose of replacing a trust fund which, in breach of trust, he has lent to the tenant for life. "What is asked is this, that the trustee shall be prevented applying the life estate in making good the breach of trust; and thus leave to chance the reparation of the breach of trust by confining the remedy to the personal liability of the trustee, or the estates of the deceased trustee.

"I cannot reconcile myself to the notion that this is a course which this court could pursue. The court being apprised that a breach of trust has been committed, and that the trustee is desirous of repairing it, is required for the benefit of other persons to prevent his doing so, to withdraw the substantial means of reparation of the breach of trust, and to leave the wife, who

is now under the dominion of the husband, to her remedy against the trustees.

"The question really comes to this, whether the trustee has done, or could do, or would be allowed by this court to do an act which would fetter his power of doing his duty. His first obligation was to perform the trusts; he had concurred in committing a breach of trust, and the instant he found he had done so, was it not his duty to repair it? And could he be permitted, in violation of his duty, to do an act for his personal benefit by which he deprived himself of the power of performing his duty.

"I have no recollection of any such case as this; at the same time it does seem to me that even if the trustee had entered into a direct covenant, these plaintiffs would not be permitted to require him to perform it, if it appeared that by its performance the security of the *cestui que trust* would be lessened."

In Raby *v.* Ridehalgh, 1 Jurist, N. S. 363, in the Court of Appeal in Chancery, Lord Justice Turner used this language: "And the effect, I apprehend, of the *cestui que trustent* for life being liable to refund must be that as the loss which ought to fall on those who instigated the breach of trust has been laid by the court upon these trustees, the trustees are entitled to stand in the place of the *cestui que trustent* in remainder, for the purpose of recovering as against the *cestui que trustent* for life, who instigated the breach of trust, or their estates, the benefit actually received by them in consequence of such breach of trust. It seems to me to be the necessary consequence of the *cestui que trustent* for life having received the income of the trust fund unduly invested, that the trustees have a right to be indemnified as against the *cestui que trustent* for life, or their estates, to the extent to which those estates have been benefited by the improper investments."

In Payne *v.* Collier, 1 Ves. J. 170, and Franco *v.* Franco, 3 Ves. 75, similar principles are stated, and in the latter case the Lord Chancellor said: "The demurrer ought to be overruled, and with costs; and I cannot help marking, in strong terms, my disapprobation of such a demurrer, which can be put in only for delay, and to cover a person guilty of a breach of trust, and to defer the time at which he ought to answer."

In Ling *v.* Colman, 10 Beav. 375, the Master of the Rolls, Lord Langdale, says: "it is said the widow concurred in the breach of trust and that she is answerable. This may be so, and Colman may file a bill to obtain the benefit of the equity against her. Moreover, the funds set apart for the widow are in his hands, and he may refuse to part with them without being indemnified." The same doctrine is laid down in Horsley *v.* Fawcett, 11 Beav. 567; Bridget *v.* Hames, 1 Collier 72 (28 English Ch.); Robinson *v.* Evans, 7 Jurist 739; Allen *v.* Knight,

5 Hare 272; Ferguson *v.* Applehite, 10 Sm. & Marsh. 301; Morey *v.* Forsyth, Walker's Ch. (Michigan) 465; Calvert on Parties, 17 Law Library 212–214; Smith's Chancery Practice 227, 228; Hill on Trustees 544; Lewin on Trusts 768, 97 Law Library.

In McGachen *v.* Dew, 15 Beav. 84, 15 Eng. Law and Equity Rep. 97, the point is directly decided, for in that case the trustees were held liable for a breach of trust to the *cestui que trusts*, and the person benefiting by the breach of trust was held liable to the trustees. The cases of Cresswell *v.* Dewell, 10 L. T. R., N. S. 22, and Webster *v.* Le Hunt, 8 Jurist N. S. 345, bear on the general subject; and in Rolfe *v.* Gregory, 11 Jur. N. S. 98, decided by Lord Westbury on 18th January 1865, it was held "that the transaction, therefore, between these two defendants was a fraudulent abstraction of the trust property by Rolfe, and a fraudulent receipt and appropriation of it by Gregory for his own personal benefit. This wrongful receipt and conversion of trust property place the receiver in the same situation as the trustee from whom he received it." Upon the ground of fraud, the receiver was held liable to the *cestui que trusts*, and that the Statute of Limitations did not apply to the fraud was concealed from the parties interested.

The proposition, therefore, with which the opinion commenced is fully supported, and the only question is its application to the case before us. In Pennsylvania an executor is emphatically a trustee, having no other interest than in his commissions, and what may be directly given to him by the testator. All funds of the estate in his hands are trust funds, and if loaned by him to others with a knowledge of the facts, are trust funds in the hands of the receiver, and, whether loaned properly or not, must be repaid to the trustee.

In the present case an exhibit, which is made part of the bill, shows that the defendants borrowed this loan and stock as a part of the assets and estate of Timothy Abbott, from his surviving executor the plaintiff, for the purpose of borrowing money on them to sustain their credit, with a distinct promise and agreement to restore and return the said assets and securities to him or his successor in the trust of executing the said will. Part has been returned—the remaining part freed from all claims, is in the possession or control of the defendants, who decline to fulfil their own agreement, and seek without any consideration to hold these trust funds.

In the light of these well settled principles of equity and common honesty, they must return and restore this loan and stock, with all interest and dividends thereon and not already received by the plaintiff. It is but proper to say, that but one of the authorities used in this opinion was cited on the argument at

[Abbott *v.* Reeves, Buck & Co.]

Nisi Prius or before the Supreme Court, and it is eminently proper in all cases in equity, that the court should be furnished with all the authorities bearing upon the question.

And now, May 16th 1865, decree dismissing the bill reversed, and demurrer overruled, and it is further ordered and decreed, that the Girard Bank assign and transfer on the books of the Lehigh Coal and Navigation Company $3000 of the loan of the said company, and for which they had given a power to transfer to D. W. C. Smith, to the plaintiff.

That the American Fire Insurance Company assign and transfer on the books of the said Lehigh Coal and Navigation Company, ninety-six shares of the stock of said company standing in their name to the said plaintiff, and if assigned to Reeves, Buck & Co., that the said Reeves, Buck & Co., do forthwith assign the same to the plaintiff.

That the Pennsylvania Company for Insurance on Lives and Granting Annuities, assign and transfer on the books of the said Lehigh Coal and Navigation Company, one hundred shares of the stock of the said company standing in their name, to the said plaintiff.

That the said Reeves, Buck & Co., assign and transfer on the books of the said Lehigh Coal and Navigation Company, one hundred and four shares of the stock of the said company standing in their names to the plaintiff, who is entitled to receive all the before-mentioned loan and stock, with all interest and dividends thereon not already received by them; and that said Reeves, Buck & Co., shall forthwith withdraw all notices to the said company not to pay the same to the said plaintiff, and shall forthwith assign and pay over to the said plaintiff all of said loan and stock in their possession, or under their control, and all interest and dividends received by and for them on the whole of said loan and stock.