William Steinmeyer, executor under the last will and testament of Christian Siebert, deceased, v. P. W. Siebert and The Ewalt Street Bridge Company, Appellant.

| | |
|---|---|
| 190 | 471 |
| 204 | 422 |
| 21 SC | 1 87 |
| 190 | 471 |
| 33 SC | 3549 |
| 190 | 471 |
| 34 SC | 3 97 |
| 34 SC | 3442 |
| 190 | 471 |
| 220 | 3168 |
| 220 | 3369 |
| f221 | 3569 |
| 190 | 471 |
| 37SC | 3 43 |

*Equity—Adequate remedy—Betrayal of confidence—Fraud—Specific performance—Personal property.*

The rule that jurisdiction in equity will not be entertained to decree a specific performance respecting goods, chattels, stocks and other things of a merely personal nature is limited to cases where a compensation in damages will furnish a complete remedy. Where the wrong is a betrayal of confidence equity will decree restitution, which may be enforced specifically against the wrongdoer.

A court of equity will sustain a bill to recover stock which it is alleged had been fraudulently obtained by one who stood in a confidential relation to the true owner of the stock.

*Equity—Equity practice—Findings of fact—Review.*

The findings of a judge sitting as a chancellor, on conflicting evidence, will not be reversed, except on clear evidence of mistake. An apparent preponderance of testimony against the findings is not sufficient to lead to a reversal, if there is testimony, which, if believed, will warrant them. They are not conclusive upon the appellate court, but they will not be disturbed, except for error which clearly appears.

Argued Feb. 28, 1899. Appeal, No. 147, Oct. Term, 1898, by defendant, P. W. Siebert, from decree of C. P. No. 2, Allegheny Co., July T., 1897, No. 203, on bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel the restitution of stock of a corporation.

The bill alleged that Christian Siebert, plaintiff's testator, died in the seventy-third year of his age; that, at the time of his death, he was the owner of a large number of shares in the Ewalt Street Bridge Company, to wit: 376 shares; that the defendant, P. W. Siebert, was his father's confidential business man, for a long time prior to his death, and had custody of all his certificates of stock, before the time of his death, including his certificates of stock in the Ewalt Street Bridge Company, as well as the books of said company, which he kept for his father who had been treasurer of said company for many years prior to his death; that, at the time of the death of said Christian Siebert, he held and owned 100 shares of stock in said bridge company, evidenced by certificate No. 163, issued February 1, 1883, which he had assigned on the back, under date of October 6, 1892, to the defendant, P. W. Seibert, the blanks being filed in in the handwriting of the defendant; that, on December 28, 1891, said Christian Siebert purchased thirty-five shares of the stock of said bridge company—then standing in the name of C. Van Buren, Jr., evidenced by certificate No. 193; that, in September, 1891, said Christian Siebert purchased and paid for six shares of the stock of said bridge company, then standing in the name of Graff, Hugus & Company, evidenced by certificate No. 115, issued June 9, 1891; that, in October, 1891, said Christian Siebert purchased six shares of the stock of said bridge company, then standing in the name of Graff, Bennett & Company, and for which no certificate had been issued; that the aforesaid 100 shares, thirty-five shares, six shares, and six shares, making in all 147 shares, all purported to have been transferred to the defendant, P. W. Siebert, prior to the death of his father, and that said P. W. Siebert alleged that he was the owner thereof. The bill further alleged that the said 147 shares belonged to the estate of said Christian Siebert, and that the said P. W. Siebert did not own, and never did own, the said stock, or any part thereof.

The bill prayed, substantially, that the plaintiff might be decreed to be, as executor, the owner of said shares of stock.

SHAFER, J., after a discussion of the evidence, found the following general conclusions of fact:

The defendant stood in a relation of great confidence and trust to his father as his confidential agent.

He did not purchase from his father, on October 6, 1892, or at any time, the 100 shares of stock.

His father did not then owe him $19,000, or, so far as appears, any sum whatever.

He did not purchase from his father the Van Buren stock on January 29, 1891, or at any time, and did not exchange therefor a note for $2,410 or $2,410.33, and did not have any such note.

He did purchase from him the Graff, Bennett & Company stock, six shares, and probably also the Graff, Hugus & Company stock.

The transfer of the 100 shares, exhibit 17, was written by defendant over the signature of Christian Siebert, at least, after January 28, 1893, and probably after the death of Christian Siebert, and at the same time when it was put in the transfer book with the Van Buren transfer, and at the same time that the dividend book was first altered.

The transfer of the thirty-five shares was filled up with the name of defendant and entered at the same time in the transfer book.

The said 100 shares and thirty-five shares belong to the estate of Christian Siebert, deceased, and the certificates therefor were procured by fraud practised by defendant.

Dividends have been received upon said stocks by said defendant, for which he should account with the plaintiff, the amount of said dividends not being sufficiently shown by the evidence.

### CONCLUSIONS OF LAW.

It is contended that this is not a case for equitable relief, and that the plaintiff has a full and complete remedy in an action for the value of the shares. We cannot agree to the proposition that a person may, by his fraudulent use of confidential relations and the opportunities offered by them, acquire shares of stock in a corporation and then say he will pay the value of the stock. The owner of the stock is entitled to membership in the corporation, and cannot be deprived of it by the act of a wrongdoer.

If our findings of fact are correct, and this is a case for equitable relief, there will be no question as to the decree which should be made. It cannot be doubted that the plaintiff is entitled to

a decree that the 135 shares of stock in the Ewalt Street Bridge Company be reassigned to the plaintiff, and that the defendant account for and pay over to the plaintiff all the dividends received by him on the same.    There will probably be no dispute as to the amount of these dividends, but if the same is not sooner agreed upon by the parties, the case will be set down on the next equity trial list for the purpose of ascertaining the same.

The court subsequently entered a decree directing a transfer of 135 shares of stock to the executor and directing the defendant to pay over to the executor $4,212.53, being the amount of dividends which he had received.

*Error assigned* was the decree of the court.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellant, cited Edelman v. Latshaw, 159 Pa. 644.

*W. B. Rodgers*, with him *J. R. Sterrett*, for appellees.

OPINION BY MR. JUSTICE FELL, March 27, 1899:

. The contention that the plaintiff was not entitled to proceed in equity because he had an adequate remedy at law cannot be sustained.    No contract in relation to the stock of the Ewalt Bridge Company is set up by the bill, but it is alleged therein that the defendant Siebert never had any right to or interest in the stock, and that he obtained the legal title thereto fraudulently and by the abuse of the relation of trust and confidence in which he stood to the real owner.    The prayers of the bill were for discovery, an account and for transfer of the stock. The rule that jurisdiction in equity will not be entertained to decree a specific performance respecting goods, chattels, stocks and other things of a merely personal nature is limited to cases where a compensation in damages will furnish a complete remedy.    Where the wrong is a betrayal of confidence equity will decree restitution, which may be enforced specifically against the wrongdoer.    In McGowin v. Remington, 12 Pa. 56, a clerk was compelled to surrender drafts, maps, plans, etc., which he had withheld from his employer; in Abbott's Executor v. Reeves, 49 Pa. 494, persons who had borrowed stocks and bonds from an executor were required to make restitution; in The Penn-

sylvania Co. v. Franklin Fire Ins. Co., 181 Pa. 40, the defendant was required to issue new certificates of stock to an owner whose certificates had been transferred under forged powers of attorney. In the case last cited it was said by our Brother DEAN that on the ground that an action at law would be an inadequate remedy " equitable jurisdiction in suits by shareholders against the corporation has, on like prayers, been frequently sustained both in the English courts and our own."

The established rule under the former practice was that the findings of a master on conflicting evidence, approved by the court, would not be reversed except on clear evidence of mistake : Stocker v. Hutter, 134 Pa. 19 ; Brotherton Bros. v. Reynolds, 164 Pa. 134. The same rule applies to the findings of fact of a judge sitting as a chancellor under the new equity rules ; his findings are not conclusive upon us, but they will not be disturbed except for error which clearly appears. An apparent preponderance of testimony against them is not sufficient to lead to a reversal, if there is testimony which if believed will warrant them. The credibility of witnesses, and in a large degree the conclusions to be drawn from their testimony, which depends upon their character, intelligence and knowledge of the subject, can be determined much better by the judge who hears them than by us on appeal : Stockett v. Ryan, 176 Pa. 71 ; Com. v. Stevens, 178 Pa. 543 ; Hancock v. Melloy, 187 Pa. 371. We have referred to this subject, not because we have entertained any doubt as to the correctness of the conclusions reached in this case, but in order that it may be better understood by the profession, as many cases come here on appeal in which the real question, as in this, is one of fact to be determined by the consideration of conflicting evidence. The findings of fact of the learned judge are stated with clearness and precision, and we have no hesitation in accepting them as abundantly sustained by the testimony.

The decree is affirmed at the cost of the appellant.