Lion Yarn Company *v.* Flock et al., Appellants.

Argued November 9, 1943. Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt, Kenworthey and Reno, JJ.

*George T. Steeley*, with him *Sidney L. Krauss* and *Carr & Krauss*, for appellants.

*William T. Connor*, with him *John R. K. Scott*, *Hardie Scott* and *Richard K. Stevens*, for appellee.

Opinion by Reno, J., March 6, 1944:

Plaintiff, a corporation, processor of yarns, sued defendants, appellants here, manufacturers of yarns, to recover $1,821.06, the balance due for services rendered in re-reeling, spooling, balling and boxing yarns. Defendants' affidavit of defense admitted performance of the services and did not deny the correctness of the sum claimed, but averred, in a counter-claim, that in the process performed by plaintiff "a certain part thereof [i. e. of the yarn] would be left over as waste, the same becoming separated and broken off from the yarn in the process, ......" and that most of this waste material was not returned by plaintiff to defendants al-

though the deceased president of plaintiff had verbally promised to do so. Defendants alleged that plaintiff had converted and sold the waste and that they were entitled to the proceeds of the sales.

The case was tried by a judge without a jury. He found against defendants, and his finding, if sustained by the evidence, has the force and effect of a jury verdict: *Tinius Olsen Testing Machine Co. v. Wolf Co.*, 297 Pa. 153, 146 A. 541. This is peculiarly true when the finding is based upon the judge's conclusion concerning the credibility of the witnesses: *Steinmeyer v. Siebert*, 190 Pa. 471, 42 A. 880.

Defendants claimed and testified that they had arranged for the processing of their yarn by plaintiff in August, 1932, in negotiations with Mr. H. H. Rawnsley, plaintiff's deceased president, at which time it was agreed that all the waste from defendants' yarn would be returned to them. In July, 1933, further negotiations with Mr. Rawnsley resulted in an increase in the prices to be charged by plaintiff, but no change was made in the agreement regarding the return of waste. The defendants stated that they received between 60 and 90 pounds of waste each year from 1932 to July, 1938, although no accurate records had been kept. According to plaintiff, the only waste which was returned was used as packing material in the cartons in which the finished balls of yarn were shipped to defendants.

During this entire time, the defendants claimed, they had been assured by Mr. Rawnsley that all their waste was being returned to them and it was not until July, 1938, that they learned from a Mrs. Johnson, then secretary of plaintiff, that some of the waste from their yarn had been kept and sold by plaintiff.

Defendants testified that it was impossible reliably to determine how much waste should have resulted from the processing of their yarn, as the weight of the yarn varied by reason of changes in moisture content and

because the quantity of waste depends partly upon the skill of the operator. The defendants did not know how much waste actually had been produced from their yarn, but one of them thought it should be two to three per cent of the total poundage processed by plaintiff. Between April 28, 1933 and October 12, 1938, a total of 361,969 pounds of yarn, or an average of about 72,000 pounds a year, was delivered to plaintiff for balling. Defendants, according to their own calculations, should have expected to receive 1,440 pounds to 2,160 pounds of waste annually, and it is impossible to believe that they would not have registered objections long before July, 1938, if their agreement had required the return of their waste. Even though the correct quantity of waste could not have been calculated with precision, it is inconceivable that defendants should have been satisfied with 60 to 90 pounds a year, when a rough estimate of the waste to which they claim to have been entitled is 24 to 30 times that figure.

A letter by plaintiff to defendants, dated August 2, 1933, stated the prices at which the defendants' yarn would thereafter be processed. One of the defendants testified that this letter contained the agreement between the parties, except that the understanding about the waste had been omitted. He admitted that he had not objected to the omission of a provision for the return of waste because he "didn't think it was important." The failure to object to the incompleteness of the plaintiff's letter at the time it was written, while not conclusive, throws significant light upon the credibility of the present assertion that there was an oral arrangement with respect to the waste.

Marietta Johnson testified that she had been present at the original conversations between the defendants and Mr. Rawnsley in 1932. At that time she was the secretary of plaintiff, having been employed by it for 22 years, during the last eight or nine of which she was

acting in the capacity· of supervisor of the converting plant. In the latter part of 1938 the defendants purchased the equipment of plaintiff and retained the witness as forelady of the balling and winding department. At the trial, therefore, Mrs. Johnson was an employe of defendants, and subject to the human tendency to resolve doubtful questions of memory in favor of her then employers. Notwithstanding a possible motive for being inaccurate, this witness testified that she could remember no discussion relating to the return of waste to the defendants, although she had a clear recollection of the conversations concerning the prices at which the processing of defendants' yarn was undertaken.

Mr. Rawnsley died on March 14, 1938, and in the course of the settlement of. his estate an accountant was employed to make an audit of plaintiff's operations during the period January 1, 1934 to June 30, 1938. While the accountant was making his examination, he wrote a letter, dated July 12, 1938, which was signed by Mrs. Johnson, at that time secretary and supervisor for the plaintiff, advising the defendants that plaintiff, in cleaning its cellar, had found some accumulated waste which would be delivered to defendants upon a written request. Defendants made the written request, and on July 18 and July 22 a total of 487½ pounds of waste was delivered to them. One of the defendants testified that upon receiving this large shipment of waste he called Mrs. Johnson on the telephone and was, for the first time, advised that plaintiff had sold some of the waste from defendants' yarn. This dispute then precipitated, and defendants stopped making further regular payments for plaintiff's services. Shortly thereafter, plaintiff's equipment was purchased by the defendants, and Mrs. Johnson was employed by them as their forelady.

Upon a careful review of the whole record, we are unable to conclude that the trial judge was in error

when he found as a fact that there was no oral agree-ment relating to the return of the waste, and that defendants had no interest therein until Mrs. Johnson, who was about to enter their employ, advised them, in July, 1938, of the quantities involved. It was then that the defendants realized that a possible source of income had escaped them, and obviously they attempted by their counter-claim to compensate themselves for their derelictions over the preceding six years. The whole course of dealings between the parties shows beyond question that the defendants never expected the return of any waste yarn, and the trial court's findings, being amply supported by the evidence, will not be disturbed.

The defendants tried their case in the court below upon an express oral contract which, as has been seen, was not proved at the trial. Here, they changed their theory, and asserted an implied obligation, arising out of the bailment, on plaintiff to return that portion of the yarn which was not incorporated into the balls and which was left over as waste from the processing operations. It is well settled that a litigant, having presented his case to the trial court on a particular theory, may not thereafter shift his legal position to a different theory in the appellate courts. In *Nuebling v. Topton Borough*, 323 Pa. 154, 156, 185 A. 725, it was declared by the Supreme Court that: "...... where a case has been submitted, tried, and decided on a given theory, on appeal it will not be reviewed on some other theory not advanced at the trial".

But even though defendants had tried their case on the bailment theory, they would still not be entitled to a judgment, in view of the findings of the lower court and the plain inferences to be drawn from the record as a whole.

In *Todd v. Figley*, 7 Watts 542, 543, the basis of the bailor-bailee relationship was described: "All the writ-

ers, as also all the authorities on this head, concur in laying it down that every species of bailment is founded upon a *contract,* either *expressed* or *implied;* ......" See also *McCahan v. Hirst,* 7 Watts 175. "All liabilities of a bailee are founded on contract": Holmes, Common Law, p. 288. "The rights, duties, and liabilities of the bailor and the bailee must be determined from the terms of the contract between the parties, whether express or implied": 8 C. J. S., Bailments, §22. A contract implied in fact has been said by the Supreme Court to arise "where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances": *Cameron v. Eynon,* 332 Pa. 529, 532, 3 A. 2d 423.

The evidence impels the conclusion that it was implicit in the contract between these parties that plaintiff should be entitled to all the waste from defendants' yarn and that they were under no liability to account therefor. The defendants' acquiescence over a period of six years to the plaintiff's retention of the waste; the circumstances under which the first protest to the practice arose; and the insignificant amounts of waste received by defendants, as compared to the total quantity they believed should have resulted from the process, all point inescapably to the implied understanding that defendants should have no property rights in any of the waste in plaintiff's plant.

The assignments of error relating to rulings upon the admission of evidence require no discussion. Even if evidence was improperly admitted, the trial judge has plainly indicated, by his memorandum filed in the case, that he did not consider it in formulating his conclusion. In such circumstances, a finding of a judge sitting without a jury will not be reversed: *Reading City Passenger Railway Co. v. Berks Co.,* 246 Pa. 44, 91 A. 1045. All assignments of error are overruled.

Judgment affirmed.