## Martin S. Berger, Appellant, *v.* Borough of Bethel Park, Appellee.

Argued May 8, 1974, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Herbert B. Lebovitz*, with him *Lebovitz & Lebovitz, P.A.*, for appellant.

*Roy F. Walters, Jr.*, with him *Owen B. McManus* and *Brandt, McManus, Brandt & Malone*, for appellee.

OPINION BY JUDGE WILKINSON, June 19, 1974:

In December, 1972, appellant acquired all of the personal property of a business, a figure improvement salon, in the Borough of Bethel Park. The prior business had been granted a certificate of occupancy for such a salon in December, 1970.[1] In February, 1973, appellant became the lessee of the premises occupied by the prior business and began operating what he calls a "health club" and what the Borough calls a "massage parlor." The Borough, in May, 1973, sought an injunction against appellant alleging that appellant's operation of a business without a building permit and a certificate of occupancy was a violation of the Borough's zoning code. Furthermore, the business was

---

[1] One of the principal stockholders of the prior business specifically testified that the occupancy permit was never transferred to the appellant, if indeed it could be.

alleged to be a massage parlor, such a business not being a permitted use.

The Chancellor issued a preliminary injunction and after two hearings, entered a final decree on July 12, 1973, making the injunction permanent. The Chancellor made two specific findings:

"1. Since the original certificate of occupancy was issued on December 11, 1970, there have been sufficient alterations and additions to the premises known as 2405 South Park Road, Bethel Park, Allegheny County, Pennsylvania, as defined in the Borough's ordinances so as to require the application and subsequent issuance of new building and occupancy permits before *any* business may lawfully commence operations at said premises; and (emphasis in original)

"2. The intended business of defendant [appellant here] which would require its female employees, while topless, to administer massages to male customers is not considered a health club which is a "permitted use" pursuant to the C-2 Borough classification."

This appeal followed.

Initially, we must note that our scope of review in this equity case is restricted. As noted by President Judge BOWMAN in *Ross v. Philadelphia Federation of Teachers,* 8 Pa. Commonwealth Ct. 204, 213, 301 A. 2d 405, 409-10 (1973): "Thus, insofar as concerns a Chancellor's findings of fact (not his inferences and deductions from facts not in issue), the law is clear that an appellate court can review these findngs only where there has been manifest or clear error, a clear abuse of discretion, etc. Given sufficient evidence which justifies the findings and logically sound, reasonable inferences and conclusions derived therefrom, the Chancellor's decision will stand. Even a preponderance of testimony against the findings will be insufficient if there is testimony which, if believed, will warrant them. Steinmeyer [v. Siebert, 190 Pa. 471, 42 A. 880 (1899)];

9 Standard Pennsylvania Practice, Ch. 40 §113." *Commonwealth v. National Gettysburg Battlefield Tower, Inc.*, 8 Pa. Commonwealth Ct. 231, 302 A. 2d 886 (1973) *aff'd.* 454 Pa. 193, 311 A. 2d 588 (1973). Having reviewed the record consistent with our scope of review, we find no manifest abuse of discretion in the Chancellor's decision that new building and occupancy permits are required by the appellant and that appellant's business is not a permitted use. Therefore, we must affirm.

The Borough zoning code provides that a building permit is required if a building is to be structurally altered and no building permit is to be issued if the use of the building would be in violation of the zoning ordinance.[2] Furthermore, no certificate of occupancy is to be issued unless a building permit has been issued and an inspection has determined that all the requirements of all the codes and ordinances have been met.[3]

In reviewing the record, we cannot conclude that the Chancellor abused his discretion when he found there had been sufficient alterations in the premises so as to require new permits. The testimony of the Borough's Building Inspector as to the installation of two additional showers and an automatic washer-dryer

---

[2] Section 61-51(A) provides: "No building or structure shall be erected, added to or *structurally altered* until a permit therefor has been issued by the Building Inspector. No such building permit shall be issued for any buidling where said construction, addition or alteration or *use thereof would be in violation* of any of the provisions of this ordinance, except upon written order of the Board of Adjustment."

[3] Section 61-52(A) provides: "After completion of a building or structure for which a building permit has been issued and inspection has determined that *all requirements* of all codes and ordinances of the Borough of Bethel Park have been met, a certificate of occupancy shall be issued by the Building Inspector, stating that the building and proposed use thereof complies with the provisions of the ordinance."

amply supports a finding that alterations had been made. Although we, if in the position of fact-finder, may have found that these alterations did not involve significant changes, we cannot conclude that the Chancellor's finding represents a clear abuse of discretion. Furthermore, there is testimony that the wiring necessary for the washer-dryer does not conform with the standards of the Borough's electrical code. This testimony fully supports a conclusion that a certificate of occupancy be denied. In fact, Section 61-52(A) of the zoning code requires it. In addition, appellant failed to comply with Section 61-52(E) of the zoning code[4] which requires an application for a certificate of occupancy before the issuance of a building permit for the alteration of a building.

Appellant's argument that he held a properly issued certificate of occupancy and building permit must fall after considering the pertinent sections of the zoning code. Nor can we accept appellant's argument that the revocation of the permits was improper because of appellant's so-called "vested rights." No such rights exist where a party, as here, has failed to obtain the proper permits and the municipality has acted with dispatch. *Herskovits v. Irwin*, 299 Pa. 155, 149 A. 195 (1930), and other cases relied upon by appellant are inapposite inasmuch as this is not a "pending ordinance" case.

There is considerable controversy involving a police officer's hearsay testimony concerning the wearing apparel to be worn by the masseuses. Although the Chancellor sustained appellant's objection to this testimony, he improperly referred to such testimony in his findings by using the term "while topless." Such a finding,

---

[4] "E. No permit for excavation for, or the erection or *alteration* of, or repairs to, any building, shall be issued until an application has been made for a certificate of occupancy."

however, was not crucial and the finding that female employees would be administering massages to male customers was supported by sufficient evidence.

A health club is a permitted use but is not defined by the Borough zoning code. The former Planning Consultant to the Borough's Planning Commission gave a detailed definition[5] of a health club, a definition which does not vary from the common and approved usage, *see Brunner v. Zoning Hearing Board of Upper Makefield Township*, 12 Pa. Commonwealth Ct. 109, 315 A. 2d 359 (1974), and after reviewing the evidence, we cannot say the Chancellor erred in concluding that appellant's intended business was not a health club and, therefore, not a permitted use.

Affirmed.

_____

[5] It's "A facility to promote the sound state of body where a person can engage in activities designed to stimulate physical exertion and relaxation for the sake of developing and maintaining physical fitness through the use of various devices and spaces such as gym, swimming pool, sauna facilities, physical therapy facilities, dressing-locker rooms, shower rooms, space where one can participate in group or individual exercises such as boxing, rope jumping, handball, running, volley ball, et cetera."