Commonwealth of Pennsylvania, at the instance of William S. Hammond, Attorney for this District of the said Commonwealth, in behalf of, and at the relation of, the Borough of Tyrone, a Municipal Corporation, by J. W. Howe et al., Burgess and Town Council, and also in behalf of, and at the relation of, the County of Blair, through John Hurd, James Funk and M. H. Fagley, its Commissioners, *v.* A. A. Stevens, G. L. Owens and Patrick Hanley, Appellants.

*Equity—Equity practice—Conclusiveness of findings of court—Injurious obstruction of stream.*

The findings of the court under the new equity rules, like the findings of a master under the old practice, will not be set aside on appeal if they appear to have been authorized by the evidence.

The finding of the lower court, based on sufficient evidence, that the erection of a wall in a stream would cause the water of the stream in times of freshets to overflow a considerable portion of a borough, to the injury of the property and health of its inhabitants, will not be set aside on appeal.

*Equity—Waters—Injunction.*

A court of equity will enjoin a person from constructing a wall in a stream, thereby causing a public nuisance, without waiting until it has been determined in a common law action that the person proposing to build the wall had no right to do so.

*Waters—Little Juniata river—Borough of Tyrone—Act of June* 8, 1891 —*Equity—Injunction.*

Under the act of June 8, 1891, P. L. 210, a borough has the right to widen and deepen within its limits the channel of a stream, and to prevent the erection of any wall or other obstruction therein which will increase the danger from floods and freshets to the property and lives of its inhabitants.

In 1894 the borough of Tyrone passed an ordinance for the widening of the Little Juniata river within the borough limits. After the passage of the ordinance two of the owners of lots in the borough proceeded to erect a wall in the stream opposite their property. On a bill in equity filed against them by the borough, the court found as a fact that the wall would be a public nuisance in times of freshets, and awarded an injunction. *Held,* that the decree continuing the injunction should be affirmed, subject, however, to proper modification of it by the court below, if the borough should refuse or neglect to prosecute with due diligence the work of widening the channel in substantial conformity with the ordinance.

Argued April 20, 1896.    Appeal, No. 471, Jan. T., 1895, by defendants, from decree of C. P. Blair Co., Equity Docket " A," No. 226, on bill in equity.    Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.    Affirmed.

Bill in equity for an injunction.    BELL, P. J., filed the following opinion:

FINDING OF FACTS.

The lot of Messrs. Stevens & Owens is a part of a tract of land originally surveyed in the name of John Harland. The official draft and description of said Harland tract bounds it on the south by the Juniata river. In 1831 Wm. M. Lyon & Co., became the owners in fee simple of said John Harland tract and about the time the Pennsylvania railroad was built they laid out the town of Tyrone principally on said tract. By deed dated September 3, 1867, Wm. M. Lyon & Co., by their attorney in fact J. R. Lowrie, conveyed the lot now owned by Stevens & Owens to D. T. Caldwell. August 4, 1869, D. T. Caldwell conveyed same to Lloyd, Caldwell & Co. March 25, 1874, Lloyd, Caldwell & Co. conveyed the lot to John T. Fowler who, by deed dated February 25, 1891, conveyed it to S. H. Boyer, and Boyer, by deed dated February 18, 1893, conveyed it to A. A. Stevens.

The description of the lot, as contained in deed, Wm. M. Lyon & Co. to D. T. Caldwell, is as follows : " All that certain

half lot in Tyrone designated on the draft of said town as Lot Number One Hundred and Twenty-three and one-half (123½) bounded as follows : Beginning at the intersection of the west line of Alley K with the north line of Main street, thence by Alley K one hundred and twenty feet to Alley L, thence by Alley L to the bank of the Juniata river, thence down said river on the bank thereof about one hundred and thirty feet be the same more or less, till it is cut by the line of Main street (extended) thence by Main street about 14 feet be the same more or less to the beginning."

This same description is followed in the succeeding deeds in the chain of title with the exception that, in the deed to A. A. Stevens after the words " thence by Main street about 14 feet, be the same more or less," the words " the actual measurement being thirty (30) feet more or less," are added.

Main street is now called Pennsylvania avenue. The building of Messrs. Stevens & Owens erected on the lot in question has a frontage of thirty feet on Pennsylvania avenue, the Juniata river flowing very close (from the map we would approximate the distance as two or three feet) to the southeast corner of said building. The building is a two story frame, the first story at least being used for business purposes. Pennsylvania avenue is the principal business street of Tyrone. It starts at the Ward House and P. R. R. station ; thence it runs north a distance of about three hundred (300) feet to the Juniata river which is crossed by the iron county bridge. Pennsylvania avenue from the Ward House to said bridge has been filled up and the floor of the bridge is but a continuation of the grade of the avenue. Passing off the bridge going north you immediately come to the lot of Stevens & Owens ; in fact the northern abutment of the bridge extends into Pennsylvania avenue in front of the Stevens & Owens building a distance of about one half the frontage of said building. As has been stated the Juniata river runs along the south border of the Stevens & Owens lot. West of the county bridge there is a gradual bend in the river which, as you stand on the bridge and look west in the general direction of Altoona, curves to the southwest, until at a distance of four hundred feet the railroad bridge of the Tyrone Division P. R. R. is reached. Looking east from the county bridge the river is seen to flow almost due east between the lot of W. F.

Conrad on the north and the Ray tannery property on the south, a distance of some two hundred feet until the junction of said river with the Bald Eagle creek is reached, said creek entering the river from the north almost at right angles. On the north side of the river east of the bridge a wall, intended to serve as a breakwater, has been constructed along the Conrad lot, and the building on the Conrad lot almost overtops this wall.

In 1867 D. T. Caldwell, the then owner of the Stevens & Owens lot, erected a stone wall along the bank of the river to protect said lot. I find as a fact that since that time said lot has lost no frontage on Pennsylvania avenue by the encroachment of the river. The fact that in the deed from W. M. Lyon & Co. to D. T. Caldwell such frontage is stated to be only fourteen feet while the present building of Stevens & Owens, thirty feet in front, is strongly persuasive that no frontage has been lost, and the weight of the testimony convinces me that there has been no decrease of frontage. I also find as a fact that Mr. Caldwell erected his wall on the then bank of the river. He was called as a witness by defendants and he testified that "he built to the bank of the river." I also find as a fact that the bank of the river as defined by said wall has not changed since the erection of the wall. West of the termination of the wall it has changed somewhat, being encroached upon by the flow of the stream, such flow by reason of the curve in the river being directed to the north side of the river.

Defendants now propose to erect a new wall, and prior to the issuance of the preliminary injunction had commenced the erection of the same. Said proposed wall starts at a point on the southern face of the northern abutment of the county bridge; gradually diverging by a gentle curve from the said abutment it runs up the bed of the river, and when it arrives at a point opposite the old wall it continues to diverge from the old wall; at a point opposite or nearly opposite the southeast corner of the Stevens & Owens building a divergence of nine feet (9.2) has been attained, and as this point is also opposite the northwest corner or angle of the southern abutment of the bridge, the inevitable result is a narrowing of the vent space of the stream by such distance of nine feet. Passing up the stream the proposed wall for a considerable distance continues to diverge from the old wall, such divergence at its widest point being twenty-

three feet, and then again the old wall is gradually approached by the new wall until the two unite, or the new unites with a continuation of the old. To compensate for the loss of said nine feet in width of vent space the defendants propose to clean out certain sand bars in the stream opposite the new wall and also erect the new wall three feet higher than the old wall. By a calculation of J. Luden Henry, civil engineer, the vent space for water—at said narrowest point—before it will now overflow the old wall, is only $739\frac{7}{10}$ square feet; raising the said wall three feet, although the space is narrowed nine feet, will increase the vent space to $886\frac{86}{100}$ feet. If the new wall is erected as proposed the said narrowest point will be seventy-five and eight tenths feet wide. About 150 feet below the bridge there is a narrow neck between the Ray tannery property and the Conrad lot with vent space of only seventy-six feet wide. On the principle that you can force into the top of a three inch pipe no more water than is passing out at the bottom, if the same narrow neck below the bridge is to be allowed to remain, the narrowing of the stream by defendants above the bridge would have very little injurious effect in causing the water to overflow; the only additional injury would be by the additional friction referred to by Mr. Guyer and Mr. Beyer in their testimony.

[I find as a fact that if said narrow neck between the Ray tannery and the Conrad lot is not to be widened the erection of the proposed wall by defendants would not probably cause such a perceptible increase in the overflow of Tyrone in times of floods as would justify a chancellor in restraining the erection of such wall by an injunction. But I also find as a fact that the vent space for water in the vicinty of this Pennsylvania avenue county bridge is already too narrow, especially in view of the well known fact that as the timber in the mountain is cut off the volume of water in times of floods is increased.] [1] The vent space of the Juniata river at this point should be widened, wherever widening is practicable, instead of narrowing.

I also find as a fact (and it is self evident) that raising the old wall three feet and cleaning out the sand bars would be attended with all the advantages to the stream which could, in any view of the matter, be claimed for the erection of the new wall, without any disadvantages.

The weight of the testimony shows, and I so find, that the

erection of the new wall, as it is proposed to erect it, will not damage the abutments of the Pennsylvania avenue county bridge. It is true that a sand bar which now protects to a certain degree the south abutment may be washed out and driven away, but said sand bar and also the series or continuation of sand bars which have collected along the south bank or side of she stream approach very nearly in character to nuisances, and should be abated.

Defendants propose however, as we understand the matter, to start their wall outside the line of their lot on ground which, while it is in the river, is within the lines (extended) of Pennsylvania avenue. By what right or by whose authority, (as the borough of Tyrone and the county commissioners both seem to be hostile) defendants undertake to so occupy territory to which they have no claim is not apparent. If defendants are compelled to withdraw to the front line (extended) of their own lot then, to obtain the additional frontage to their lot on said front line which would enure to them by the erection of the new wall, they would be obliged to construct a wall out into the stream joining their present wall at almost right angles. The result would be an angle just above the north abutment of the bridge and an eddy which would tend to undermine the north abutment of the bridge.

Such findings of facts in regard to the navigability of the Juniata river, as I regard to be material, can well be embraced in answers to defendants' written requests to find certain facts. I will therefore proceed to answer said written requests.

First. That the land contained within the municipal limits of the borough of Tyrone, included within which is the lot of defendants, is part of four tracts of land granted and conveyed by the commonwealth of Pennsylvania, as follows: Warrant to John Harland, dated October 8, 1784, for 100 acres of land situate in Bedford county (now Huntingdon) including the improvement since March 1, 1784, on Little Juniata at the narrows of Logan's Ridge, adjoining the proprietaries' line in Sinking Valley, on which was surveyed on the 4th of October, 1786, 42 acres, 127 perches and allowance, adjoining Edward Shippen, James Harris et al.

Warrant of Frederick Lazarus, dated February 1st, 1794, on which was surveyed on the      day of June, A. D. 1794, 227

acres, 118 perches and allowance of land situate on the waters in Little Juniata, Tyrone township, Huntingdon county, and adjoining lands of Edward Shippen, Daniel Turner, Samuel Daniels, Adam Johnson and John Smith.

Warrant of James Harris dated October 8, 1784, for 400 acres of land adjoining land, this day applied for by Alexander Hale, on the north bank of Little Juniata river, on which was surveyed October 5, 1786, 452 acres, 112 perches. Application No. 2, dated August 1, 1766, Edward Shippen, Junior, for 1000 acres of land lying on the Little Juniata creek, beginning where said creek runs through a piney road, and extending up said creek until it joins lands to be surveyed for Joseph Shippen, Junior, on which was surveyed June 26, 1767, 492 acres and allowance of the said tracts having been so granted and conveyed without reservation and restriction. *Answer:* Affirmed.

Second. That the defendants claim title to the locus in quo under the aforesaid grants or parts of them. *Answer:* Affirmed.

Third. That at the time of the aforesaid grants the Little Juniata river flowed through the same and emptied into the Juniata river near what is now Petersburg, Huntingdon county, Pennsylvania, and was a public stream or highway for the purpose of navigation. *Answer:* Affirmed.

Fourth. That by an act of the legislature of Pennsylvania, approved March 29, 1808, the Little Juniata river between certain points, including the plan of said borough of Tyrone, was declared a public highway for the passage of rafts, boats and other vessels, but that the said Little Juniata river has not been used as a public highway for the passage of rafts, boats and other vessels for more than 30 years past. *Answer:* Affirmed.

4½. That Logan's Narrows is east of, below, the locus in quo, and is east of the John Harland tract. *Answer:* Affirmed.

[Fifth. That the width of the ancient bed of the stream was variable and indefinite. *Answer:* I decline to affirm this point as to the bank of the river near the southeast corner of the Stevens & Owens building which is the point most material to the present controversy. I find, however, that prior to the erection of the county bridge and the filling up of Pennsylvania avenue and adjacent land south of the bridge, the river in times of flood found vent and flowed through a flat, now filled up,

between the bridge and the base of the Brush mountain. The Pennsylvania railroad now runs along said base of said mountain; next to the railroad in the direction of the river has been erected the Ward House and the Pennsylvania railroad station; the space between said railroad and the county bridge, especially along the line of Pennsylvania avenue, has been filled up. But I find as a fact that in the vicinity of the county bridge the bed of the stream has not changed.] [2]

[Sixth. That owing to the construction of the railroad, public highway and other improvements the ancient bed of the stream has been interfered with and diverted at various points, and the bed of the same over which the river now flows is not the ancient bed, but one created by reason of the diversion of the stream so as to encroach upon the property on the north bank of the river. *Answer:* I decline to affirm this point except in so far as it may be affirmed by my answer to the preceding (fifth) point.] [3]

[Seventh. That by the erection of the wall of defendants and the extension of the same along the alley bounded by the Juniata river by the municipal authorities, or other persons, the damage sustained in the past from the overflowing of the bank of the Juniata river will, to a great extent, be avoided, and while the danger and damage as sustained will not be increased by the erection of a proposed wall by defendants. My answer to this point is as follows : If the narrow neck below the bridge between the Ray tannery property and the Conrad lot, is not to be interfered with and widened, the erection of the proposed wall by defendants will not increase the injury by overflow in time of floods to such an extent as would justify a chancellor in interfering by injunction.] [4]

7½. That for times past the Juniata river, as it passes through the borough of Tyrone, in times of freshets and floods, has overflowed the banks, filling the lower part of the borough of Tyrone, in the vicinity of 10th street, Logan avenue and Pennsylvania avenue with water to a depth of six feet or less and doing great damage to real and personal property and the streets and alleys of said borough. *Answer:* Affirmed.

Eighth. That the width of the bed of the Little Juniata river, at a point below the locus in quo, as fixed by the walls erected with the knowledge and acquiescence of the borough of Tyrone,

is seventy-six feet. *Answer :* I decline to find that the bed of the river at the point designated is fixed at seventy-six feet, but I do find that it has been narrowed to that width. The borough authorities must have seen this, and there is no evidence that prior to the commencement of this present action they took any steps to remedy the matter.

Ninth. That the wall as laid out by defendants will leave in said river a clear bed for the flow of water of the width of at least seventy-six feet, and of a width equal to the width of the channel at a distance about 150 feet farther down the stream, below the county bridge, and at a point between the tannery wall and that erected by W. F. Conrad. *Answer :* Affirmed.

[9½. The present passing capacity of the stream from the bed to the level of the present wall of defendants, and from said wall across to the abutment, as shown by cross section of J. Luden Henry, is 739.5 square feet. The passing capacity of the stream, at the same point, as it will be if defendants erect their proposed wall, will be 886.86 square feet or about twenty per cent greater. The construction of the proposed wall by defendants will be a material protection to their property, and will enable them to use a portion not now available by reason of interference by the water of the Juniata river, and it will not materially, if at all — increase the danger and damage sustained in the past by the citizens of Tyrone in the vicinity of 10th street, Logan avenue and Pennsylvania avenue, from the overflow of the banks by the Juniata river in time of high water. *Answer :* I affirm this point with the exception of the last clause, to wit: the clause following the words "interference by the water of the Juniata river." My answer to said last clause is the same as my answer to the seventh point.] [5]

Tenth. That the wall which defendants are erecting is located within the lines of their own property, and when erected will not interfere with the use of the Little Juniata river as a public highway for the passage of rafts, boats and other vessels. Nor will it cause any greater rise of water in times of freshets, under the Juniata bridge, or endanger the abutments of the same. *Answer :* The wall proposed to be erected will not interfere with the use of the Little Juniata river as a public highway, for the passage of rafts, etc. As it is proposed to be erected, it will not endanger the abutments of the bridge, but

the commencement of the wall is not within the lines of defendants' property as I understand the matter.

Eleventh. That said wall is necessary to protect the property of defendants from damage in time of high water, and to enable them safely to occupy and improve the same. *Answer:* I decline to affirm this point as it is put. A wall is necessary, but rebuilding and raising the old wall would protect the property now occupied by defendants. The proposed wall would be a benefit to defendants because it would enable them to increase their frontage on Pennsylvania avenue.

Twelfth. That no greater damage will be sustained by the citizens of Tyrone, nor will any greater damage be done to the streets and highways of the municipality, by the construction of the proposed wall of defendants than has been sustained in the past from overflows of its banks by the Little Juniata river in times of high floods. *Answer:* My answer to this point is the same as my answer to the seventh point.

### CONCLUSIONS OF LAW.

The act of March 26, 1808, declaring the Juniata river from Logan's Narrows to the mill of Edward Bell to be a public highway having been passed subsequently to the issue of warrant and return of survey of the John Harland tract, the right of the owners of said Harland tracts to hold the land to the center of the Juniata river (subject to the easement of navigation) was not divested: Coovert v. O'Connor, 8 Watts, 477. Navigation ceased years ago on this portion of the Juniata river; moreover the wall proposed to be erected by defendants would be no obstruction to navigation; therefore it is unnecessary to consider legal questions concerning the obstruction of navigable streams. Conceding, however, that Messrs. Stevens & Owens own to the middle of the river they have no right to so obstruct said river as to injure their neighbors. If any authority is necessary to sustain this last proposition it will be found in the opinion of Mr. Justice WILLIAMS, in Fulmer v. Williams, 122 Pa. 206, wherein he clearly demonstrates that the maxim sic utere tuo ut alienum non lædas is as clearly applicable to water fronts as to back lands. The lot of Messrs. Stevens & Owens is in the business portion of Tyrone and the river as it flows past said lot is within a square of the business

center of the town. Any obstruction which would cause ordinary floods to overflow said business portion of the town, or which would materially increase such overflow, would be a public nuisance. " The remedy for public nuisance is by information by the Attorney-General. And the Attorney-General may likewise proceed by bill in equity: " Bispham's Equity, sec. 438.

[The natural result of narrowing the banks of a stream is to cause it more readily to overflow its banks in time of flood. In the vicinity of the proposed wall the river has been encroached upon by one obstruction after another until the passageway for the water has become too narrow and should be widened instead of narrowed. The proposed wall would add another encroachment. Defendants attempt to justify their right to erect said wall by claiming that the stream will still be as wide as it is some 150 feet below at the narrow neck between the Conrad lot and the Ray tannery property. But two wrongs never make one right. Said Conrad-Ray narrow neck should be widened, and a halt should be called on all persons who may attempt to further encroach on the stream.] [6]

At the narrowest point between the abutments of the bridge there is a passageway for water ninety-three feet wide. No one should be allowed by the erection of walls or otherwise to make the channel any narrower than this distance of ninety-three feet; rather an attempt should be made to keep the channel wider, and when the bridge is rebuilt the distance between the abutments should be increased.

[A wall is necessary along defendants' water front, and such wall should be continued on up to the railroad bridge, but such wall should be constructed as part of a system of breakwaters to protect the citizens of Tyrone, instead of being erected according to the caprice of each individual lot owner, and in its construction the channel of the stream should be widened, wherever practicable, instead of being narrowed.] [7] The sandbanks also should be systematically removed, and the bottom of the river should be deepened. [By act of assembly of June 8, 1891, P. L. 210, Pur. Dig. edition of 1894 p. 243, authority is conferred on the borough councils of Tyrone to so widen and deepen the channel of the Juniata river. Proceedings in this court for the appointment of viewers to assess damages show that on September 3, 1894, said councils did pass an ordinance

for this purpose. In the belief that said ordinance will be enforced and that existing encroachments on the stream will be removed, and further attempts to encroach will be prevented, a decree is now made continuing the preliminary injunction awarded on August 3, 1894.] [8]

Equity is a flexible system and its decrees can be moulded and modified by subsequent events. If in the future it be made to appear to this court that vigorous measures have not been adopted to widen the river at the narrow neck between the Conrad lot and the Ray tannery property it will be possible to modify, or wholly vacate, the decree now made, as it is not the province of a court of equity to restrain one man from committing a nuisance if similiar nuisances in the same neighborhood are allowed to go unnoticed and uncomplained of.

ANSWER TO LEGAL POINTS SUBMITTED BY DEFENDANTS.

That under the grants of the commonwealth of Pennsylvania to John Harland, dated October 8, A. D. 1784, surveyed October 4, A. D. 1786, the right of the commonwealth to the land described in said warrants and surveys, which includes the locus in quo, passed to the warrantees, without reservation or restriction; and the Little Juniata river being the southern boundary of said John Harland tract, at a point where said tract covers the locus in quo, vested the bed of said stream in said grantees and their successors in title: Gould on Waters, p. 214, note 1; Coovert v. O'Connor, 8 Watts, 477; Railroad Co. v. Ingham, 36 Pa. 194; Zug v. Com., 70 Pa. 138; Fulmer v. Williams, 122 Pa. 191. *Answer :* Affirmed.

That the defendants holding the locus in quo, under the grant from the commonwealth to John Harland are vested with all the title of the commonwealth to said tracts, and the streams flowing over, or abutting thereon, in so far as the locus in quo is part of the same, and the southern line of defendants' lot of ground—the locus in quo—being the "bank" of the Little Juniata river vests in them a good and sufficient title to the land covered by water of the Little Juniata river to the middle thereof. *Answer :* In the deeds for the lot in question said lot is described: . . . "Thence by alley L to the bank of the Juniata river, thence down said river on the bank thereof about 130 feet, be the same more or less. till it is cut by the line of

Main street." In a note to p. 208, 10 Lawyers' Annotated Reports, after stating the general rule to be that where a river is described as the boundary the grant extends to the center of the stream it is said: "But if the land is described as bounding on the bank or shore of a stream then the low water mark will be the boundary. The particular reference to the bank excludes the stream:" Child v. Starr, 4 Hill, 369; Halsy v. McCormick, 13 N. Y. 296. In Harch v. Dwight, 17 Mass. 299, PARKER, C. J., says: "Without doubt by our law the owner of land extending to the bank of a river will own to the middle of the river, if it be not navigable, and so public property. But the owner may sell the land without the privilege of the stream, as he undoubtedly will if he bounds his grant by the bank."

The above stated rule would limit the claim of Messrs. Stevens & Owens to the bank of the Juniata river and would make them trespassers on some one's land—Wm. M. Lyon & Co.'s most probably—if they should attempt to build their proposed wall.

However the cases of Fulmer v. Williams, 122 Pa. 206; Wood v. Appal, 63 Pa. 224 and other cases would seem to indicate that the rule as stated in the foregoing citations, is not the law in Pennsylvania; hence I have concluded to affirm this point.

That the act of assembly passed March 26, A. D. 1808, declaring the Little Juniata river from Logan's Narrows to the mill of Edward Bell a public highway for the passage of rafts, boats and other vessels, being subsequent to the grant of the commonwealth to John Harland covering the land in controversy, did not divest the property of the grantees to said tract, or the soil covered by the waters of the stream abutting thereon; but left to the same their right to the soil to the middle of the stream not inconsistent with the public use of the stream as a highway for the passage of rafts, boats and other like vessels. *Answer :* Affirmed.

The Little Juniata river from Logan's Narrows to the mill of Edward Bell (now Bell's Mills), is not and never was one of the large rivers or principal streams of the commonwealth. *Answer :* Affirmed.

The wall which defendants are erecting on their property in

so far as it, in any way, is built on land covered by waters of
the Little Juniata river, will not obstruct or impede the navi-
gation of the same, or interfere with any easement or right the
public may have in the waters thereof for the passage of rafts
boats and other vessels. *Answer :* Affirmed.

[The wall as proposed to be constructed by defendants is
not a nuisance per se; whether it is or will be a nuisance at all
depends upon the testimony, which in the case is conflicting
and contradictory, and the right to the injunction prayed for
not being clear, and not having been settled by the verdict of
a jury, the bill must be dismissed at the cost of the plaintiffs :
New Castle v. Ranney, 130 Pa. 546; Wood v. McGrath, 150
Pa. 458; Mowday v. Moore, 133 Pa. 612; Rhodes v. Dunbar,
57 Pa. 286.   *Answer :* I decline to affirm this point. [9.]   In
Bispham's Equity, sec. 440, page 492 (third edition), it is
said : " The tendency of the modern decisions is certainly very
much against the old rule which required the prior establish-
ment of the legal right." Mowday v. Moore, 133 Pa. 598 and
Wood v. McGrath, 150 Pa. 451, were both cases of alleged pri-
vate nuisances, but in Mowday v. Moore, Mr. Justice MITCHELL
shows very conclusively that the plaintiff had no case even at
law, and in Wood v. McGrath, Mr. Justice GREEN character-
izes the case of plaintiff as " worse than doubtful." In New
Castle v. Raney the nuisances complained of were of a public
character, but that case is clearly distinguishable from the
present one; there the attempt was to destroy a dam which had
" been in existence for over half a century," and which, " if a
nuisance at all " had become " so by the gradual growth of the
city of New Castle ; " here the wall is attempted to be built
after the thriving and growing town of Tyrone had sprung up
all around the locus in quo, and defendants are met at the
" threshold " of their " enterprise by a remonstrance." The
injunction asked for in New Castle v. Raney was in effect man-
datory ; in the present case the injunction is in effect preven-
tive.   " Preventive injunctions are more easily obtained from
the courts than mandatory : " Beach's Modern Equity, sec. 753.
[Moreover it is clear the proposed wall will be a nuisance ; the
doubt as to whether any additional injury will be caused there-
by in time of floods arises from the fact that another nuisance
of like nature exists a little further down the stream.] [9]

SUPPLEMENTAL REPORT.

After preparing the foregoing portion of this report I left it at the prothonotary's office, notifying parties and counsel that access to the same might be had, and also informing them that I would sit on March 1, 1895, to hear any suggestions or rearguments as to alleged mistakes either of law or of fact. At the request of defendant said resitting was adjourned until March 8, 1895, at which time counsel for both parties appeared. Defendants submitted exceptions—herewith filed—and presented testimony taken on rule and notice, showing that the borough authorities of Tyrone had done nothing to carry into effect the ordinance passed September 3, 1894—and hereinbefore referred to—for the improvement of the Juniata river. Counsel for plaintiffs asserted that said improvement was to be pushed in good faith, and gave several excuses for the delay, one being that the tax levy for 1894 had been made prior to the passage of said ordinance and consequently no financial provision for the additional expense had been made, but that such provision would be made at the approaching annual tax levy. Counsel for defendant made an elaborate argument to the effect that my finding of fact, as to the narrowing of the river being a public nuisance, was not sustained by the testimony, and that the weight of the evidence showed that the proposed wall would be a benefit instead of an injury.

I have carefully reread the testimony, but must decline to alter my former findings of fact, except in one particular. In the answer to tenth request for findings of fact I said, " As it is proposed to be erected . . . . the commencement of the wall is not within the lines of defendants' property as I understand the matter." I reform said portion of said answer so that it will read, " As it is proposed to be erected . . . . the commencement of the wall will not be within the building line of defendants' extended, but will be within their curb or outer pavement line extended," and they claim the right so to do by reasoning analagous to that which justifies a lot owner in constructing a coal cellar under the pavement.

Counsel for defendants also presented an elaborate argument alleging error in conclusions of law. This argument was principally directed to the point that, assuming the evidence to be conflicting, no injunction should issue until the plaintiffs' right

has been established by law. My views on this point have already been given in the answer to defendants' sixth legal point and I see no reason to revise the same.

In City of Philadelphia's Appeal, 78 Pa. 39, Mr. Justice Sharswood closes the opinion of the Supreme Court by saying : "Every case of this kind must depend on its peculiar circumstances and will form no precedent for any other case varying from it in those circumstances or the character and extent of the encroachment." This remark of course was made in a case in some respects dissimilar to the present one, but in a certain sense at least the remark is applicable to all proceedings for injunctions. And, under all the circumstances of the present case I deem it best that the preliminary injunction should be continued. Suppose the injunction is dissolved and defendants energetically proceed to erect a building on the land which they claim the right to include inside of their proposed wall. If the borough of Tyrone, under the provisions of the act of assembly of June 8, 1891, P. L. 210, proceed to widen the river, in accordance with the lines as laid out by ordinance of September 3, 1894, one of two results will follow ; if plaintiffs are right in their present contention the building can be torn back to the bank line without paying any compensation to defendants for such destruction to the building; if defendants are correct in their present claims as to the facts and the law, still the borough can tear down said building by paying compensation therefor. In either case it would be so much money out of pocket for some one without a corresponding benefit to the other party, for, in the latter event, defendants would be simply reimbursed out of the borough treasury for money expended by them in erecting the proposed improvements. On the other hand a continuance of the proposed injunction can damage no one except in so far as injury may possibly result to plaintiffs through delay. If, as intimated by defendants at the reargument, the borough authorities of Tyrone do not propose energetically to proceed with their projected improvement of the Juniata river as provided for by said ordinance, and said ordinance is a mere makeshift to meet the exigencies of the present case, and the motive of certain members of borough council is not to improve, but simply to lay obstacles in defendants' path, while others are allowed to pass unnoticed, the court, after a proper interval of

time has elapsed to develop the real purpose of the borough authorities, can modify the decree this day made and allow defendants to erect the wall, and seek compensation for any delay occasioned by these proceedings by action brought against the plaintiffs or the injunction bondsmen. I have therefore adopted the decree suggested by, and submitted with the original report, with the single exception that I have directed plaintiffs to pay the costs of their own witnesses; this provision as to a division of the costs seems to be but just in view of the fact that plaintiffs failed to substantiate their allegations as to the injury to the county bridge, and their contention as to the effect of the act of assembly declaring the Little Juniata river a navigable stream.

### DECREE.

[This case came on to be heard and was argued by counsel and after due consideration, now March 23, 1895, it is ordered, adjudged and decreed as follows, viz : That the preliminary injunction awarded on August 3, 1894, restraining defendants from erecting a wall in the Juniata river near the Pennsylvania avenue county bridge be continued and that defendants pay the costs of these proceedings excepting plaintiffs' bill for witnesses which is to be paid by plaintiffs.] [10]

*Errors assigned* were (1–9) portions of opinion as above, quoting them ; (10) the decree, quoting it.

*W. L. Pascoe, of Stevens, Owens & Pascoe,* for appellants.—That no one but the attorney general can sue for the commonwealth in proceedings of this kind to abate a public nuisance is so well established as to scarcely require authority to sustain it : Buck Mountain Coal Co. v. Lehigh C. & N. Co., 50 Pa. 99.

Neglect on the part of the public may create such an equitable estoppel as to lead courts of equity to decline to exert the extraordinary remedy of an injunction in its behalf : Gould on Waters, (ed. 1891) sec. 533 ; Kerr on Injunction, (ed. 1871) p. 362 ; Phila.'s App., 78 Pa. 37.

If for argument's sake it be conceded that the testimony was conflicting and contradictory, still, under all the authorities, for the court to assume the functions of a jury and undertake

to pass upon such testimony and continue the injunction, was, we submit, a clear error: Newcastle v. Raney, 130 Pa. 562; Wood v. McGrath, 150 Pa. 458; Mowday v. Moore, 133 Pa. 611; Rhea v. Forsyth, 37 Pa. 506; 2 Story's Eq. 251; 3 Pomeroy's Eq., sec. 1349; Bispham's Principles of Equity, (ed. 1882) sec. 440; 1 High on Injunction, (ed. 1890) secs. 760, 762; Gould on Waters, (ed. 1891) sec. 506; Spelling on Extraordinary Relief, (ed. 1893) p. 340.

The nuisance must actually exist; if the injury be doubtful, eventual or contingent equity will not interfere by injunction. The fears of mankind, though they be reasonable, will not create a nuisance: Bispham's Principles of Equity, (ed. 1882) sec. 440; Gould on Waters, (ed. 1891) sec. 512; Rhodes v. Dunbar, 57 Pa. 287; Butler v. Rogers, 1 Stockton, 487.

Equity will not lend its aid to enforce by injunction the bylaws or ordinances of a municipal corporation restraining a certain act unless the act is shown to be a nuisance per se: High on Injunctions, 466, sec. 788; City of Hudson v. Thorne, 7 Paige Ch. (N. Y.) 261; Williamsport v. McFadden, 15 W. N. C. 269.

*W. L. Hicks, of Hicks & Templeton,* and *Aug. S. Landis,* with them *J. H. Smith,* for appellee.—The tendency of the modern decisions is certainly very much against the old rule which required the prior establishment of the legal right: Bispham's Eq., sec. 440, p. 492; Reimer's App., 100 Pa. 182; Rochester v. Erickson, 46 Barb. 92; 3 High on Injunctions, sec. 768.

In grants by the commonwealth of lands bounded by water there is no presumption of an exclusive use of the water, nor of hereditament of the soil covered with water: Carson v. Blazer, 2 Binn. 491.

On streams declared to be public highways the absolute ownership extends only to high water mark, and all below that is public river highway. Nothing can be erected between high and low water marks: Bailey v. Miltenberger, 31 Pa. 43; Wainwright v. McCullough, 63 Pa. 77; Stover v. Jack, 60 Pa. 343; Fulmer v. Williams, 122 Pa. 208; Palmer v. Farrell, 129 Pa. 169.

OPINION BY MR. JUSTICE McCOLLUM, January 4, 1897 :

This is an appeal from the decree of the court of common pleas of Blair county enjoining the defendants until further order from erecting a wall in a stream which passes through the borough of Tyrone in said county, and is known as the Little Juniata. Two of the defendants are the owners of a lot, in said borough, which extends to the bank of said stream, and along it for a distance of one hundred and thirty feet. In the summer of 1894 they employed the other defendant to erect a wall in the stream opposite their lot, and he was engaged in the performance of the work when the proceedings to prevent the consummation of it were instituted. The material complaint in the bill for an injunction was that the erection of the proposed wall would narrow the channel of the stream, and in times of freshets and floods cause the water to overflow a considerable portion of the borough to the injury of the property and health of its inhabitants. This complaint was met with a denial by the defendants that the risk of injury from floods and freshets would be increased by the wall, and with an averment that such risk would be reduced by it. The court, however, was convinced by the evidence in the case that the complaint was well founded, and that the wall would constitute a public nuisance.

The findings of the court under the new equity rules are like the findings of a master under the old practice. They will not be set aside on appeal if they appear to have been authorized by the evidence. An apparent preponderance of testimony in support of the appellants' contention is not sufficient to condemn them, because in the finding of facts from evidence the credibility of the witnesses is an important factor, and of this the court below had better opportunity to judge than is given to us on appeal. In considering a specification of error which calls in question a finding of fact by the court we must not lose sight of the familiar principle or rule applicable to the report of a master or to the verdict of a jury. With this rule in view we have carefully examined and considered the testimony applicable to the issues of fact in the case before us. The findings based upon this testimony appear to be well sustained by it. It authorized and it fairly supports the answers to the defendants' requests for findings of fact.

The defendants claim that they cannot be lawfully enjoined

VOL. CLXXVIII—36

from erecting the wall at the point in the stream where they have located it until it has been determined in a common law action that they have no right to build it there. The reason given for the claim is that the evidence in regard to their right and the effect of the wall upon the overflow in times of freshets and floods is conflicting. They cite as justifying their claim: Newcastle v. Raney, 130 Pa. 562; Mowday v. Moore, 133 Pa. 612, and Wood v. McGrath, 150 Pa. 458. These cases were brought to the attention of the learned judge of the court below, and were plainly and satisfactorily distinguished by him from the case at bar. All that we need add to his opinion on this point is that the borough of Tyrone has a clear right under the act of June 8, 1891, P. L. 210 to widen and deepen, within its limits, the channel of the Little Juniata, and to prevent the erection of any wall or other obstruction therein which will increase the danger from floods and freshets to the property and lives of its inhabitants. The right to widen and deepen the channel of the stream necessarily includes the right to appropriate legal process to prevent interference with the exercise of it. The widening of the channel in accordance with the provisions of the ordinance of September 3, 1894, will require the removal of the wall the defendants propose to erect. The erection of the wall would therefore subject the defendants or the borough to an expense that may well be avoided. We must presume in the absence of evidence to the contrary that the ordinance was passed in good faith, and that the borough authorities intended to commence and complete the projected improvement as soon as practicable. That the learned judge of the court below so interpreted this action is manifest from what he said in his supplemental report. There is no visible warrant in this record for a different view of their purpose in passing the ordinance. We have concluded therefore upon a careful consideration of the case to affirm the decree continuing the injunction, subject however to such modification of it by the court below as is indicated in said report as proper, if the borough refuses or neglects to prosecute with due diligence the work of widening the channel of the stream, in substantial conformity with its ordinance of September 3, 1894.

Decree affirmed and appeal dismissed at the costs of the appellants.