Mary Kate Hancock, wife of Elmer E. Hancock, *v.* George D. Melloy, Appellant, J. Frank Melloy, Helen M. Melloy, and Rachel Melloy.

187   371
190   475
187   371
201   389
187       371
23 SC ¹198
187       371
22 SC ¹624
187       371
e 26 SC ¹121
187       371
30 SC ¹630
187       371
33 SC ¹549
187       371
34 SC ¹ 97
34 SC ¹442

*Equity—Practice—Findings of fact—Review—Appeals.*

Where there is evidence to sustain the findings of fact by the court below in an equity suit, the Supreme Court will not nicely weigh the testimony to determine which side predominates, nor carefully compare the statements of contradictory witnesses and pass on their credibility. Under the new equity rules, this is for the court below.

*Statute of frauds—Part performance of oral contract—Specific performance.*

A part performance of an oral contract for the conveyance of an interest in real estate takes it out of the operation of the statute of frauds and enables a court of equity to decree a full and specific performance of such contract.

On a bill in equity filed by a sister against a brother, it appeared that

the mother of the parties had been the administratrix of her husband's estate, but that the defendant had transacted all the business of the estate. When the administratrix's account was filed, the plaintiff sought to surcharge the accountant with considerable sums of money, and also claimed an equitable interest in certain real estate. To facilitate a compromise the case was continued by the orphans' court, and on the following day plaintiff and defendant, with their counsel, met and concluded an oral agreement which was to be carried into effect by a formal writing to be thereafter drawn by counsel, a memorandum of which was at the time made. By this agreement plaintiff consented to the confirmation of the account as filed, and defendant was to pay to the plaintiff a portion of the proceeds of the sale of the real estate. On the following day the account was confirmed at the request of the parties. After the confirmation of the account defendant refused to execute the written agreement, offering, however, to consent to the opening of the account, but to this some of the other parties interested therein objected. *Held*, (1) that the evidence showed a part performance of the oral contract by the plaintiff; (2) that the plaintiff had no adequate remedy in damages; (3) that she was entitled to maintain the bill for specific performance.

Argued Jan. 7, 1898. Appeal, No. 175, Jan. T., 1897, by defendant, George D. Melloy, from decree of C. P. No. 2, Phila. Co., June T., 1894, No. 690, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for specific performance.

PENNYPACKER, P. J., found the facts to be as follows:

1. John M. Melloy died intestate May 1, 1890, leaving surviving him a widow, Rachel Melloy, and four children, George D. Melloy, J. Frank Melloy, James B. Melloy, and Mary Kate Hancock.

2. Letters of administration upon his estate were granted to the widow, Rachel Melloy, and the affairs of the estate were managed by George D. Melloy. He acted as agent for his mother as administratrix, and he took possession of all of the assets of the estate and collected all of the income.

3. On or about July 1, 1870, John M. Melloy purchased a store and lot of ground situate on the north side of Market street, between Ninth and Tenth streets, in the city of Philadelphia, containing in front on Market street twenty-three feet and in depth two hundred feet to Hunter street, being No. 929 Market street. The cash paid, being $10,000 over and above

the incumbrances of $23,000, was furnished by John M. Melloy, and by his direction the conveyance was made to his son George D. Melloy.

4. The business, which previous to 1870 had been conducted by John M. Melloy, was continued after that date in the name of John M. Melloy's Sons, consisting of George D. Melloy, J. Frank Melloy, and James B. Melloy; and John M. Melloy at that time retired. He, however, retained a desk at the store and was paid $12.00 a week by the firm until his death. No entry indicating the change was made upon the books. The bill, note, and letter heads, the circulars, and the bank account, were changed. At this time the business was worth about $14,000 or $15,000.

5. That George D. Melloy said at various times to his mother, Rachel Melloy, to Mary Kate Hancock, the complainant, Susan E. Melloy, Helen May Melloy, Helen Melloy, and Elmer E. Hancock that, while the store property was in his name, he held it in trust for the family, and that each of his brothers and his sister had a one-fourth interest in it, or words substantially to that effect. Though he denies having made these statements, his denial was somewhat uncertain in tone, and there is so much testimony to the contrary, corroborated by his willingness to make the agreement hereinafter referred to, that the court is compelled to find that his testimony is in this respect incorrect.

6. Rachel Melloy, administratrix of John M. Melloy, filed her account of distribution of the said estate in the orphans' court for the city and county of Philadelphia. In this account she charged herself with nothing representing any interest which John M. Melloy may have had in the firm of John M. Melloy's Sons.

7. The complainant, Mary Kate Hancock, through her counsel, Frank P. Prichard, Esq., claimed to surcharge the administratrix with the value of the assets of the business carried on at 929 Market street, and claimed further that the complainant was the equitable owner of a one-fourth interest in the store and also in a property No. 1340 North Twenty-third street, purchased with firm assets and standing in the name of George D. Melloy. The account of the administratrix was called for audit February 5, 1894, but in consequence of the raising of these questions between the parties the hearing was postponed until February 7, 1894.

8. On February 6, 1894, Mary Kate Hancock, her counsel, Frank P. Prichard, Rachel Melloy, and George D. Melloy met at the office of William H. Staake, Esq., and after the matters in controversy were discussed and after considerable negotiation it was verbally agreed between Mary Kate Hancock and George D. Melloy that George D. Melloy should convey to Mary Kate Hancock, a one-fourth interest in the store No. 929 Market street, subject to the incumbrances upon the property, and should further pay to her $2,000 for back rent and a rental of $520 per year for the future, beginning with February 1, 1894, and that she should withdraw any claim to surcharge the administratrix with the assets of the business and any claim to the house on Twenty-third street, and should consent to a confirmation of the account as it had been filed.

9. In pursuance of this agreement counsel for Mary Kate Hancock, together with counsel for George D. Melloy, appearing before the orphans' court February 7, 1894, said to the auditing judge that an agreement had been reached and that the account might be confirmed. An adjudication was thereupon filed confirming the account, and it was subsequently confirmed absolutely.

10. George D. Melloy has since refused to carry out his part of the agreement.

The court finds the law as follows:

1. A part performance of an oral contract for the conveyance of an interest in real estate takes it out of the operation of the statute of frauds and enables a court of equity to decree a full and specific performance of such contract.

2. The agreement between the complainant and George D. Melloy to settle the questions of surcharge and to withdraw the objections to the confirmation of the account of the administratrix, and the subsequent confirmation of the account by the court in pursuance of this agreement, was such a part performance as enables the court to decree a specific performance of this agreement.

3. A decree ought to be made requiring George D. Melloy to make a conveyance of a one-fourth interest in the store property No. 929 Market street to the said Mary Kate Hancock, subject to the incumbrances, and requiring him to pay to her $2,000 and a rental of $520 per year from February 1, 1894.

4. The demurrer of the defendant, George D. Melloy, ought to be overruled.

*Errors assigned* were to the court's third, fifth and eighth findings of fact, and to all of the court's findings of law, and to decree of the court.

*Theodore F. Jenkins* and *George P. Rich*, for appellant.— The bill is subject to two fatal defects, to wit: (*a*) It is an ejectment bill, of which a court of equity will not take jurisdiction, for the reason that the plaintiff must pursue the plain and adequate remedy which she has at law to recover possession of the land, by her action in ejectment: Barclay's App., 93 Pa. 50; Richard's App., 100 Pa. 52; Kennedy's App., 81* Pa. 163; (*b*) it is a bill to enforce a parol contract for the sale of lands, and as such falls within the prohibition of the statute of frauds, it being requisite in order to take such a contract out of the statute that not only must the purchase money have been paid and the contract so far performed that compensation in damages would be inadequate and rescission unjust and inequitable, but the plaintiff must have taken and maintained exclusive and notorious possession of the property, under and pursuant to the contract: Act of March 21, 1772, sec. 1.

Every parol contract for the conveyance of land is within the statute of frauds and perjuries, except where there has been such part performance as cannot reasonably be compensated in damages, and where it would be unjust to rescind the same. Unless possession be taken under the contract, there can be no pretense of part performance: Moore v. Small, 19 Pa. 461; Postlethwaite v. Frease, 31 Pa. 472; Derr v. Ackerman, 182 Pa. 591; Workman v. Guthrie, 29 Pa. 495; Washabaugh v. Entriken, 34 Pa. 74; Shoofstall v. Adams, 2 Grant, 208; Whiting & Co. v. Pittsburg Opera House Co., 88 Pa. 100; Chadwick v. Felt, 35 Pa. 305; McCormick's App., 57 Pa. 54; Spencer's App., 80 Pa. 317; Yeakle v. Jacob, 33 Pa. 376; Huff v. McCauley, 53 Pa. 206; Goucher v. Martin, 9 Watts, 106; Meason v. Kaine, 63 Pa. 335; Myers v. Byerly, 45 Pa. 368.

The confirmation of an executor's account is a conclusive decree as to such matters only as are properly embraced within it, not as to matters not so embraced: Robins's Est., 180 Pa. 630; Swartz v. Morgan, 163 Pa. 199.

An attorney may open a default which he has taken, whether improperly or not, and vacate the judgment entirely, even though his client has instructed him to the contrary: Hageman v. Salisberry, 74 Pa. 280.

*Henry P. Brown*, with him *John K. Valentine*, for appellee. —The finding of the court under the new equity rules are like the findings of a master under the old practice. They will not be set aside on appeal if they appear to have been authorized by the evidence: Com. v. Stevens, 178 Pa. 543; White v. Wright, 179 Pa. 75.

The contract having been performed to such an extent and in such a way that to declare it invalid would work a fraud upon the plaintiff, a court of equity will enforce it: Fry on Specific Performance, ed. of 1881, secs. 555, 556; Story's Equity Jurisprudence, sec. 762; Moore v. Small, 19 Pa. 466.

The sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question : Fink v. Farmers' Bank, 178 Pa. 170; McMurray's App., 101 Pa. 427; Britton's App., 45 Pa. 172; Williams v. Morris, 95 U. S. 457; Brown v. Sutton, 129 U. S. 238.

It has not uniformly been held that possession was an indispensable prerequisite to entitle one to a specific enforcement of a parol contract for the sale of land: Riggles v. Erney, 154 U. S. 244; Townsend v. Vanderwerker, 160 U. S. 171; Denver & R. G. R. R. v. Ristine, 77 Fed. Rep. 68; McManus v. Cooke, 35 Chancery Div. 681; Hudson v. Watson, 2 Pa. Superior Ct. 422; Watkins v. Watkins, 24 Ga. 402; In re Cooke's Trustee's Estate, 5 Law Rep. (Ireland) 99.

OPINION BY MR. JUSTICE DEAN, October 17, 1898 :

The findings of fact and conclusions of law are so fully and clearly stated by the learned judge of the court below that we need not here repeat them. His decree sustains the bill which, though filed originally against appellant, another brother and two sisters, the last three formally of record, admitted the contention of plaintiff, and asked to be dismissed as defendants ; so, this appeal is by George D. Melloy alone, who assigns four-

teen errors. The first three are to findings of fact. We will not review these findings, except to ascertain whether there was any evidence to warrant them ; we will not nicely weigh testimony to determine which side preponderates, nor carefully compare the statements of contradictory witnesses and pass on their credibility. Under the new equity rules this was for the court below : Com. v. Stevens, 178 Pa. 543. As there was evidence to sustain these findings, the assignments of error questioning their correctness are overruled.

All the other assignments, directly or incidentally, are based on the court's first and second conclusions of law, as follows :

" 1. A part performance of an oral contract for the conveyance of an interest in real estate, takes it out of the operation of the statute of frauds, and enables a court of equity to decree a full and specific performance of such contract.

" 2. The agreement between the complainant and George D. Melloy to settle the questions of surcharge and to withdraw the objections to the confirmation of the account of the administratrix, and the subsequent confirmation of the account by the court in pursuance of this agreement was such a part performance as enables the court to decree a specific performance of this agreement."

To understand fully the nature of " the part performance " of the parol contract it may be well to notice the facts bearing on it. Rachel Melloy, the widow of John M. Melloy, the latter the father of these parties, had, on January 4, 1894, filed as administratrix of her deceased husband her account, showing receipts of over $30,000, and claiming credit of nearly $10,000. George D. Melloy, the son, this appellant, though not nominally the administrator, transacted all the business for his mother, and made up for her the administration account and filed it. To this account Mrs. Hancock filed exceptions, and sought to surcharge the accountant with considerable sums of money; besides, she claimed an equitable estate in a property on Twenty-third street. The account in the orphans' court was called for audit, February 5, 1894, but because of the questions raised, the hearing was continued for two days, to facilitate efforts to compromise, and to avoid the publicity which would result from litigation. On the next day, the brother, represented by his counsel, and the sister, by hers, met at the office of his

counsel, and concluded a parol settlement of all their conten-
tion; the agreement, as found by the learned judge, was arrived
at, and was to be carried into effect by a formal writing to be
thereafter drawn by counsel and then signed by the parties, a
memorandum of which was at the time made; by this agree-
ment Mrs. Hancock was to consent to the confirmation of the
account as filed.   The next day, counsel for both parties went
before the auditing judge, and announced the settlement, and
asked that the account might be confirmed; it was confirmed
accordingly, and thereafter, on March 3, confirmed absolutely
by the court.   The agreement was prepared in writing, as stip-
ulated in parol, but George D. Melloy, after the absolute con-
firmation of the account, refused to execute it.   On July 3,
1894, following the settlement of February 6, Mrs. Hancock
filed this bill for specific performance.   As to the parol agree-
ment, three facts stand out with a prominence and certainty not
often shown in this class of cases: 1. There was a parol agree-
ment on February 6, which had the full assent of the minds of
those interested.   2. The exact terms of it are beyond doubt.
3. The contracting party on the one side, Mrs. Hancock, fully
performed her part of it.   Leaving out of view altogether the
testimony of the parties interested, two highly reputable mem-
bers of the bar having no interest in the contention, being of
counsel on opposite sides of it, both testify to these three facts
and corroborate the accuracy of their recollection by writings
made at the time.   There remains, then, the single question,
did the performance by Mrs. Hancock of her part of the parol
contract for the conveyance to her of an interest in real estate
take the contract out of the operation of the statute of frauds,
so as to enable equity to decree specific performance?   With-
out special reference to all the many authorities cited by counsel
we may remark, that there is no real conflict between them, al-
though there has been difficulty in properly applying them to
the varying facts of different cases; that is, one judge of one
court occasionally differs from another in inferences drawn from
nearly the same established facts; one holding that the breach
in some cases could be compensated in damages, while another
would decide it could not.   Judge STORY, in a note to section
762 of his Equity Jurisprudence (13th ed.), says: " A verbal
agreement for the sale of lands or of an interest therein may be

enforced in either of two cases : First, when that agreement has been partly performed; and, secondly, when to declare the agreement invalid would work a fraud upon the plaintiff. To the first of these cases there is one exception, to wit, where the act of part performance consists merely in the payment of money. To the second there are probably no exceptions." Fry on Specific Performance, sections 555, 556, says : "The part performance of a contract by one of the parties to it may, in the contemplation of equity, preclude the other party from setting up the statute of frauds, and thus render it, although merely resting in parol, capable of being enforced by way of specific performance. This exception is based on a principle of common fairness, on the view that it is unjust in a man who has made a bargain with another to allow that other to act upon it and then to set up the want of a formality as a bar to the complete performance by himself."

Our decisions, and they are many, adopt the rule of these texts, as in Moore v. Small, 19 Pa. 466 : "Every parol contract is within the statute of frauds and perjuries, except where there has been such part performance as cannot be compensated in damages." And the United States Supreme Court follows the same rule, Riggles v. Erney, 154 U. S. 244 : "If the parol agreement be clearly and satisfactorily proved, and the plaintiff, relying upon such agreement and the promise of the defendant to perform his part, has done acts in part performance of such agreement to the knowledge of the defendant—acts which have so altered the relations of the parties as to prevent their restoration to their former condition—it would be a virtual fraud to allow the defendant to interpose the statute as a defense, and thus to secure to himself the benefit of what has been done in part performance."

So that, the only error the learned judge of the court below could have committed was in his inference, that Mrs. Hancock's performance of the contract on her part had so altered the relations of the parties as to make it impossible to reinstate them in their former condition. One thing is clear, by the absolute confirmation of the account she could not surcharge the administratrix with the large amount she sought to have added to the debit side of that account. It is replied, that difficulty could have been obviated by George D. Melloy consenting to the open-

ing of the account, and that such an offer was made by his counsel. But, counsel' did not then represent all the parties interested, some of whom objected; and assuming that an offer thus made, months after a final decree, found Mrs. Hancock in the same situation as before the agreement, with her evidence, written and oral, preserved for presentation, how could the brother undertake to thus traffic in the court's discretion? The orphans' court might very well have said, that its decree was made with the assent of all parties, to end family discord; the term has passed; it has remained for months unobjected to and will not now be disturbed. If either party has refused to perform his part of the family compact, let him resort to the common pleas, either on the law or equity side, for redress. Therefore, we think the court below properly treated that decree as final. So treated, how could an action at law for damages have been either a convenient or an adequate remedy? How measure the damages? Evidence might have been adduced pointing to a decree the orphans' court might have made. The orphans' court is a court of equity, having its own rules of procedure; it passes on facts and law. How determine approximately what might have been the decree of the auditing judge, or, if exceptions had been filed, that of the court in banc? It is more than doubtful whether, in an action at law, a court of law would have admitted evidence bearing on the question of what might have been the decree of another court having exclusive jurisdiction of the subject; in such case, she would have been deprived of redress in the court to which she had a right to resort, and have been turned out, practically, from that in which she brought suit. The whole subject, by the bad faith of the brother, had been beset with such difficulties, that the court below properly held, that from the very nature of the part to be performed by Mrs. Hancock, and which she had fully performed, she could not be compensated in damages, and that she had adopted the only adequate remedy when she sought in equity a decree for specific performance.

An examination of all the assignments of error fails to detect anything calling for reversal. The decree is therefore affirmed, and the appeal dismissed at costs of appellant.