# Obney *v.* Obney, Appellant (No. 1).

*Equity—Equity practice—Evidence—Findings of fact—Review—Fraud —Remainderman—Sale of interest.*

The findings of the court below under the new equity rules are like the findings of a master under the old practice, and will not be set aside on appeal if they appear to have been authorized by the evidence.   The appellate court will not nicely weigh testimony to determine which side preponderates, nor will it carefully compare the statements of contradictory witnesses, and pass on their credibility.   Under the rules this is for the court below.

The finding of facts by the court below that one remainderman induced another remainderman to sell him the latter's interest in an estate for an inadequate price on the false representation that the life tenant was hale and hearty, will not be set aside by the appellate court where there is sufficient evidence to sustain the finding.   In such a case the remainderman who sold his interest is not obliged to show that the other remainderman knew that the life tenant was ill at the time the representations were made.   A positive declaration by the purchaser that the life tenant was hale and hearty, and likely to outlive them all, when he was ignorant of her actual state of health, would subject him to the same legal consequences as if he knew that she was ill.

In such a case it is not necessary for the person aggrieved to show that a relation of trust existed between him and the other remainderman.

*Laches—Fraud—Equity—Assignment of interest in estate.*

A remainderman who has been induced to assign his interest in an estate to another remainderman at an inadequate price by representations of the latter as to the good health of the tenant for life, sufficiently explains his delay in instituting proceedings by showing that he was old and weak in health, that he lived a long distance from the residence of the defendant, and that he did not learn of the physical condition of the life tenant until after her death.

Argued May 9, 1904.   Appeal, No. 39, April T., 1904, by defendant, from decree of C. P. June T., 1902, No. 6, on bill in equity in case of Thompson C. Obney v. Santford Obney et al. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Bill in equity for the cancellation of an assignment of an interest in a mortgage.

WILSON, P. J., found the facts to be as follows:

## FINDINGS OF FACT.

1. The defendant Santford Obney is a nephew of the plaintiff Thompson C. Obney, and at the time of the assignment of the interest of plaintiff in the two mortgages, the plaintiff was residing in Alliance, Stark county, Ohio, where he had resided for quite a number of years prior thereto. The defendant Santford Obney was residing in Independence township, Beaver county, Pa., upon part of the lands embraced in the mortgages of Nancy Obney, to whom the interest on said mortgages was payable during her lifetime, she residing near Clinton, Allegheny county, Pa., about ten miles from the home of the defendant Santford Obney.

2. Plaintiff's father died in 1865 or 1866, leaving to survive him a widow, Nancy Obney, who had been his third wife. Plaintiff had never seen his stepmother, Nancy Obney, except at the time of the settlement of his father's estate.

3. The plaintiff, accompanied by his brother William Obney, who resided at the same place, visited among others the defendant in the summer or fall of 1898, at which time there was some conversation in relation to the sale of plaintiff's interest in these mortgages.

4. The defendant Santford Obney visited his Uncle Thomas C. Obney in the month of May, 1899, for the purpose of purchasing his interest in these mortgages in suit, and upon that occasion made the following representations to his uncle and other members of the family as to the health of Nancy Obney: "She is strong and hearty, and will live ten years longer, and probably outlive all of us."

5. Early in May, 1899, Nancy Obney while on a visit to her son John Wilson was taken ill with kidney trouble and dropsy, and was attended by a physician who described her condition as being serious, she being then eighty-two years of age, so that the statements made by Santford Obney as to the health of Nancy Obney were not warranted by the facts.

6. The interest of Thompson C. Obney in said mortgages was $578.68, and the sum of $200 paid therefor was a grossly inadequate price, the present worth of said sum, even if Nancy Obney had lived ten years being $360 or thereabouts.

7. Thompson C. Obney was at the time of making the assignment to Santford Obney sixty-eight years of age, in feeble

health, having just recovered from a long sickness, and was at the time feeble in body and mind, and relying upon the statement of his nephew, Santford Obney, he conveyed his interest in said mortgages.

### CONCLUSIONS OF LAW.

1. Taking into consideration the inadequate price paid for plaintiff's interest in said mortgages, the relationship of the parties, the condition of the health of the plaintiff, and the representations of the defendant Santford Obney, as to the condition of the health of Nancy Obney, which were not warranted by true facts, whether these statements were made by Santford Obney with the knowledge of her real condition or not, the law presumes that fraud was intended and actually was perpetrated.

2. It is quite certain from the relations existing between the contracting parties in this case that they were not dealing upon equal terms. On the one hand we have the weak condition of the plaintiff, his trust justifiably reposed in his nephew, Santford Obney, and the grossly inadequate price paid as the consideration for the assignment of the mortgages. The burden is upon the defendant, Santford Obney, to show affirmatively that no deception was used, and that all was fair, open, voluntary and well understood. This in the opinion of the court the defendant has failed to do. By cancelation of the assignments of said mortgages the plaintiff and defendant are restored to their respective positions; and the defendant is entitled to the repayment of the money paid therefor, together with interest until the date of the decree.

3. The assignment of all his interest in said mortgages by Santford Obney to Anna A. Obney was without consideration, and at or about the time of this assignment rumors of a suit to rescind the contract were circulated.

4. The defendants, Santford Obney and Anna A. Obney, should reassign to the plaintiff, Thompson C. Obney, all their interest in the said two mortgages obtained by assignment from Thompson C. Obney, to Santford Obney, and from Santford Obney to Anna A. Obney, his wife, upon the payment to Santford Obney by the plaintiff, Thompson C. Obney, the sum of $200 with interest thereon from the date of the same by the defendant to the plaintiff to the date of this decree.

5. That the defendant, Santford Obney, should pay the costs of this proceeding.

## REMARKS.

It is not necessary in a résumé of this case to take into consideration any facts which are matters of record but only those which relate to the issue which is joined to the pleadings.  As will be observed from the findings of fact, Nancy Obney, the stepmother of the plaintiff, was the third wife of plaintiff's father, and no cordial or sociable relations existed between them. It appears from the evidence that the plaintiff had left home prior to his father's marriage to Nancy Obney, was living at a distance from his old home, and there being no cordial relations, and, indeed, new family ties having been contracted, the plaintiff with a family about him had little in common  with Nancy Obney, other than such interest as he had in his father's estate ; and under the evidence it appears that the plaintiff never saw his stepmother but once, and that at the time of the settlement of his father's estate in June, 1866.   In May, 1899, when the defendant Santford Obney visited his uncle, the plaintiff, for the purpose of purchasing his interest in those mortgages, the plaintiff was enfeebled in health ; having had in anticipation his interest in this mortgage one can readily imagine from this long period of waiting, considering the plaintiff's enfeebled health and a short prospect of life at the time, that the defendant Santford Obney appeared and represented to him that the health of his stepmother was such that she might live ten years, and outlive him, he was willing to believe his nephew's statement and accept some money rather than to die without receiving some benefit himself.   The defendant Santford certainly knew that in any event it was quite a bargain on his part, and if Nancy Obney did live for ten years the present worth of the plaintiff's interest in these two mortgages was $361 or thereabouts ; and when Santford Obney represented the condition of Nancy Obney's health to be good, whether he knew it to be true or not, the plaintiff in the peculiar circumstances of this case was justified in reposing faith in his nephew's statements, and whether Santford Obney stated that which he knew or did not believe to be true, the plaintiff replying upon these statements entered into the said contract, and plaintiff is entitled to relief.

Assignment of Error—Opinion of the Court. [26 Pa. Superior Ct.

*Error assigned* was decree entered in accordance with the opinion.

*A. P. Marshall*, with him *J. H. Cunningham*, for appellants.

*W. S. Moore*, for appellee.—The appellate court will not disturb the findings of fact approved by the court below, except for clear error: Stocker v. Hutter, 134 Pa. 19; Stockett v. Ryan, 176 Pa. 71; Com. v. Stevens, 188 Pa. 543; Hancock v. Melloy, 187 Pa. 371.

OPINION BY HENDERSON, J., July 28, 1904:

It is unnecessary to restate the facts and conclusions of law. They are clearly presented in the opinion of the learned trial judge and sustain the plaintiff's bill. The only controverted questions of fact related to the state of the health of Nancy Obney and the alleged untruthful representations made by the defendant, Santford Obney, to the plaintiff with reference thereto at the time the assignment of the mortgages was obtained. We have examined the evidence with care and are of the opinion that it supports the findings of the court. It is not seriously denied that during the month of May, 1899, Nancy Obney was very ill. The fact is established by the uncontradicted evidence of the attending physician.

The plaintiff's evidence of the representations made as to the state of health of Nancy Obney clearly outweighs the denial made by Santford Obney. The plaintiff was old and had been ill for a long time and was weak in body and mind. The consideration paid for the assignment was grossly inadequate. In the light of the evidence the conclusion of the court is not open to criticism. If the case seemed doubtful to us, however, on the printed evidence it would not be our duty to reverse the decree. It was said in Com. ex rel. v. Stevens et al., 178 Pa. 543, that: " The findings of the court under the new equity rules are like the findings of a master under the old practice. They will not be set aside on appeal if they appear to have been authorized by the evidence. An apparent preponderance of testimony in support of the appellants' contention is not sufficient to condemn them, because in the finding of facts from evidence the credibility of the witnesses is an important

factor, and of this the court below had better opportunity to judge than is given to us on appeal. In considering a specification of error which calls in question a finding of fact by the court, we must not lose sight of the familiar principle or rule applicable to the report of a master or to the verdict of a jury." And in Hancock v. Melloy, 187 Pa. 371, the court said: "We will not review these findings (of fact) except to ascertain whether there was any evidence to warrant them; we will not nicely weigh testimony to determine which side preponderates, nor carefully compare the statements of contradictory witnesses and pass on their credibility. Under the new equity rules this was for the court below."

The facts being established by the finding of the court the decree follows as a logical conclusion of law. It was not necessary for the plaintiff to show that Santford Obney knew that Nancy Obney was ill at the time the assignment was obtained. A positive declaration by him that she was hale and hearty and likely to outlive them all, when he was ignorant of her actual state of health, would subject him to the same legal consequences as if he knew that she was ill.

Nor was it necessary for the complainant to show that a relation of trust existed between him and Santford Obney. The existence of such a relation would shift to the defendants the burden of showing that the transaction was conscionable and fair. But the plaintiff's complaint is that the assignment was procured for an inadequate consideration by false and fraudulent representations as to the health of Nancy Obney and that having been found to be true the assignment obtained by that means is void and the contract should be set aside.

The suggestion of laches cannot avail the defendants. Taking into consideration the age and physical debility of the plaintiff, his remoteness from the residence of the defendant and the fact that he did not learn of the physical condition of Nancy Obney until after her death are a sufficient explanation of the delay in instituting proceedings.

The appeal is dismissed and the decree affirmed at the cost of the appellants.